# ROBERT STUART

*v.*

# SOLOMON McKICHAN.

1. BOOKS OF ACCOUNT—*presumed to be correct, as between partners.* Partnership books of account are presumed to contain a true history of the business and a true record of the transactions between the partners. In the absence of proof to the contrary, reliance is properly placed on such books in stating the partnership account.

2. PARTNERSHIP—*right of partner to credit for interest paid.* Where one is taken as a partner in a business on account of his financial credit, and to raise money to prosecute the business, and he is credited by the book-keeper for the interest paid by him in procuring loans, and the other partner having examined the books, makes no objection to such entries, they may properly be allowed in stating the partnership account.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. T. S. DICKSON, for the appellant.

Messrs. HERVEY, ANTHONY & GALT, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a decision of the Superior Court of Cook county, rendered in a suit in chancery, wherein Solomon McKichan was complainant, and Robert Stuart was defendant.

The important questions made in that court arose upon exceptions to the master's report, which was confirmed with the exception of one item, and a decree accordingly.

The propriety of this decree is questioned by Stuart, who brings the case here, and insists that his exceptions should have been allowed. We do not propose to consider all the exceptions, but those only we deem important. Nor do we propose to go into the minutiæ of the testimony, but will consider such facts only as appear prominent in the record.

The prominent facts are these: In the summer of 1865, and up to the autumn of 1869, these parties had several contracts to pave certain streets in Chicago. The first contract was between appellant and appellee, and one Andrew Gray, as copartners, in 1865. Soon after it was entered into, Gray disposed of his interest to appellant and appellee, so that they became equal partners, each entitled to one-half the profits. In 1869 it was claimed by appellee that appellant had caused an estimate to be taken on the work done, which he appropriated to his own use. Appellee thereupon filed a bill to enjoin appellant from negotiating this voucher, whereupon appellant filed his bill to investigate all the partnership transactions from 1865 up to 1869, and for an account and a dissolution of the partnership. It was then agreed that the two suits should be consolidated, and such decision as might be rendered should settle both cases.

A large amount of testimony was taken, and the cause heard and referred to a master to state an account. This was not long prior to the fire of October, 1871. Nearly all the papers, files and vouchers were destroyed by that fire. Since the fire, the files have been restored, and testimony retaken, and the cause again referred to the master to state an account.

The master in due time made his report, to which appellant

filed twenty exceptions. As we have said, the court disallowed all the exceptions, save as to one item, and confirmed in all things else the report.

When the cause was before the master, the books of account and vouchers were produced before him, and before the court also, in considering the exceptions. Those books are presumed to contain a true history of the business, and a true record of the transactions between these partners. It would appear that appellant was to superintend the work on these contracts, and appellee to raise the means by which to carry them on, he being a man in high financial credit, and to keep the books and accounts of the firm. With the knowledge of appellant, one McDougal was placed in charge of the books, whose ability is not questioned, and through whose hands all the accounts and vouchers passed. There being no proof to the contrary, reliance is properly placed on the books so kept.

The first exception taken to the master's report is, that appellee charged and was allowed against the firm the interest and discounts he was required to pay for the use of the money he raised for the partnership. It is claimed by appellant that by the terms of the copartnership appellee was to raise the money necessary to carry out the contracts. It appears from the books kept by McDougal that the interest on moneys borrowed to carry on the work was charged to the firm in the account of "expenses." These books were open to the inspection of appellant at all times, and he knew from an examination of them from time to time that these charges were on the books, and he made no objection to them. It is in proof, also, by McDougal, the book-keeper, and by appellee, and by Gray, that it was expressly understood by the parties, and spoken about at the time the copartnership was formed, that the interest which would have to be paid on loans of money for the work was to be charged to the firm account as expenses. McDougal testifies he called appellant's attention to those charges for interest paid; that he looked over the book time and again with him to see the different entries and told him

the rate of interest the bankers were charging; that it was an understood thing at the beginning that the firm should pay interest on such moneys as appellee might borrow for the use of the firm. It would seem appellee was in the concern for the special purpose of raising money by his commercial credit. We think the court was fully warranted in disallowing this exception.

The next exception of importance is in disallowing certain payments on behalf of the firm for gravel and other material. Appellant testifies that he kept a memorandum book when on the street where work was being done, in which he would, from time to time, as he paid out money, enter the amounts in this memorandum book. It is proved, to our satisfaction, that for all these amounts he was duly credited by the book-keeper on the books of the firm. Of this there can be no doubt, and the proof is made still stronger by the fact that in 1871, while these suits were in progress, before the fire of that year, and when appellant's memory must be supposed to have been as clear as it was in 1873, when he testified, Alfred Spink was selected by himself as a very competent person to examine these books and to state an account, and to whom, as Spink testifies, appellant presented all the memoranda and accounts against the firm. None of these claims which he now seeks to recover were presented to Spink. Spink examined these books with great care, and found them correct, in the main, they showing appellant had been credited with all he then claimed. These claims were not thought of before the fire. We have examined the testimony carefully, and fail to see that the court below misunderstood it, or mistook its force. We think it fully establishes the fact that appellant received on the books of the firm all the credits to which he was entitled, and has no cause to complain of the decree.

Something is said about appellee appearing on the books as a large debtor to the firm. We understand this was so in ap-

pearance only, his share of the profits not having been credited to him at the time.

On the whole record, we are of opinion justice has been done, and we affirm the decree.

*Decree affirmed.*