TIMOTHY O'BRIEN

*v.*

WILLIAM HANLEY.

1. PARTNERSHIP BOOKS — *binding on each partner alike.* The books of a firm kept by a clerk, to which all of the partners have, or are entitled to have, access at all times, are equally binding on all the partners.

2. One of the members of a firm kept the time of men employed, in a pass or time-book, and reported the time of each man, weekly, to the book-keeper, who entered it on the books of the firm, and when the men were paid, if they claimed more time than had been reported to the book-keeper, the partner keeping the time was called in and the books corrected in accordance with the facts. Sometimes the partner keeping time was sick or absent, and then the book-keeper got the men's time from other sources. On a settlement of the partnership affairs, the partner who had kept the time of the men claimed that the books of the firm were incorrect, because there was more time shown by them than his time-book showed: *Held,* that, under the circumstances, the books as kept by the clerk were binding on both partners.

WRIT OF ERROR to the Circuit Court of Will County; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. Egbert Phelps and Messrs. Munn & Munn, for the plaintiff in error.

Mr. C. B. Garnsey, for the defendant in error.

Mr. Chief Justice Scholfield delivered the opinion of the Court:

Hanley and O'Brien were in partnership at Lockport, Will county, in the business of boat building and repairing, and running dry-dock and saw-mill, from December 6, 1869, until January, 1873, when the partnership was dissolved by Hanley's selling his interest in the business to another party. O'Brien filed a bill for an account, to which Hanley filed answer and also a cross-bill. Each party claimed that there was a balance due him, and charged that the other had received more than he was entitled to have. The court referred the cause to the master in chancery, to state and report an account, and the evidence in reference thereto. The master made his report, in conformity with the order of reference, finding a balance due from O'Brien to Hanley of $368.48. Exceptions were filed to the master's report, which he overruled ; and, upon hearing in the circuit court, the master's ruling was sustained, and decree was rendered in conformity therewith. O'Brien brings the case here by writ of error, and relies upon two grounds of reversal.

1. That the circuit court erred in not sustaining the exception to the master's report that he improperly allowed for the payment of 320¾ days' labor the sum of $511.83, which labor, he claims, was not rendered for the firm, and, consequently, should not have been paid for from its assets.

2. That the circuit court erred in not sustaining the exception to the master's report, because he disallowed O'Brien for 345 days' labor rendered by him for the firm at $2.50 or $3 per day, amounting in the aggregate to $862.50 or $1,035.

The first of these grounds is supported by evidence of

O'Brien that he kept time-books showing the time worked by each laborer for the firm, and that the amount Hanley claims to have paid out to the several laborers is in excess of this time by 320¾ days. Books were kept by one Marcy, as clerk of the firm, which show that the time for which payment was made is correct. O'Brien insists, however, that those books were made up from the time entered in his books; that his books are those of original entries and the others not, and that therefore his must be taken as the only competent evidence of the fact.

It is hardly necessary to go into the authorities as to what books are to be deemed books of original entries and what are not, since a reference to the evidence here will show that the books kept by Marcy, unless otherwise impeached than by O'Brien's daily entries in his books, must be conclusive against O'Brien. Both Hanley and Marcy testify that the books kept by Marcy were made up in this way: O'Brien reported to Marcy the time each laborer worked, weekly, and Marcy set it down in the books. When the laborer came for his pay he was asked for his time, and if he gave it differently from O'Brien, as sometimes happened, he was immediately sent for O'Brien, and brought him and had the discrepancy satisfactorily adjusted and the books corrected, and upon this he was paid. A portion of each year O'Brien was sick or absent from the yards of the firm, and then the statements of time were obtained from other sources. The books kept by Marcy must, therefore, have been the only correct time-books kept — since it does not appear corrections were made in O'Brien's books in accordance with the facts, as they were in the books kept by Marcy, when discrepancies between the time entered in them and that claimed by laborers occurred; and they did not contain entries of the time of the laborers while he was sick or absent.

The books kept by Marcy were no more the books of Hanley than they were the books of O'Brien. They were the books of the firm. O'Brien had, or was entitled to

have, access to them at all times, and he is quite as responsible for the way in which they were kept as is Hanley. They bind him and Hanley alike. Either is at liberty to impeach them by showing error — but O'Brien did not successfully do so by the proof he introduced for that purpose.

It is insisted, on behalf of O'Brien, that he is entitled to compensation for his individual services while a member of the firm. The general rule that a partner is not entitled to compensation for his services in and about the partnership business, in the absence of an express stipulation to that effect, in the articles of copartnership, is conceded. But it is insisted, first, there was here such express stipulation; and, secondly, that there is another exception under which he is entitled to claim compensation, namely, where, from the course of the business between the copartners, or from the nature of the services rendered in connection with the duties and obligations imposed by the copartnership articles upon the several members of the firm, the implication is it was intended he should be paid.

There is not one word in the articles of copartnership in reference to paying compensation to O'Brien. It is recited, simply, that, having paid $1,500 to Hanley, he has become an equal owner in the partnership property; and it is provided that he is to have the management, superintendence, and employment of men in and about the business; and neither his nor Hanley's duties are, in other respects, defined. Resorting to the other evidence, it appears that Hanley furnished capital as it was needed in the business, made purchases of stock, etc., and gave some attention to the business. They were to share equally in profit and loss, and there appears no greater reason why O'Brien should be paid for his services than that Hanley should be paid for what he did in aid of the business. Neither by express agreement nor by implication, therefore, do we think it was originally designed O'Brien should be paid for his services.

But it is claimed there was an agreement, subsequent to

the drawing of the articles of copartnership, by which O'Brien was to be paid for his services. This is all the evidence on that subject, as shown by the record. O'Brien's counsel asked him: "After drawing of the articles of copartnership, was there any arrangement made between you and Dr. Hanley as to wages for your own personal work? If so, state fully what it was." He answered: "Yes, I claimed wages the same as the men had on the dock; was all I required."

Suppose he did claim such wages, unless Hanley agreed he should have them, that was the end of it. Hanley testified on this point:

"It had been the former practice to charge $5 for foreman's services to the patrons of the yard. To increase the patronage, I proposed to O'Brien to charge thereafter $3 per day for such services, and that I would agree that, his amount of profit falling below the wages which would be due him at the rate of $3 per day, for every day he worked, that I would make it up from my share of the profit, so that he would be guaranteed $3 per day whether the profits amounted to that or not. This was satisfactory to him, and we continued to charge at the rate of $3 per day ever since, he giving in, each week, the number of days he worked."

This, although not very lucidly expressed, simply amounted to a guaranty of $3 per day profits for every day he worked. O'Brien did not contradict this, and he made no effort to place any other construction on the agreement. And we think, therefore, the master in chancery and the court below properly enough assumed it was the real agreement and the only one having any reference to the time O'Brien worked, and stated the account on that hypothesis.

It is claimed, however, that, even in this view, O'Brien was not allowed for enough — that the books kept by Marcy showed that he had worked more time than he was allowed for. The evidence shows that O'Brien reported more time than he was allowed for, and that the time was, by

Marcy, entered on the books as he reported. But both Hanley and Marcy show this entry by Marcy was by reason of Marcy's mistake — he not understanding the nature of the agreement between Hanley and O'Brien with respect to his time; and O'Brien fails to show that he actually worked more days than was included in the master's calculation.

We have carefully read the master's report and all the evidence accompanying it, as found in the record, and we are satisfied that the decree of the court below does no substantial injustice to O'Brien. It will, therefore, be affirmed.

*Decree affirmed.*