## JOSEPH GREGG

### *v.*

## GEORGE M. HORD.

*Filed at Ottawa October 31, 1889.*

1. PARTNERSHIP—*books of account of the firm—as showing the course of dealings, and the state of the account between the partners.* Although partners enter into a written agreement, stating the terms on which the business is to be conducted, yet if there be a long course of dealing, or a course of dealing not long, but still so long as to demonstrate that they have all agreed to change the terms of the original written agreement, they may be held to have changed these terms by their conduct. Such course of dealing may be shown by the partnership books.

2. Where a partner knows of charges against the firm upon the books of the firm, and makes no objection or complaint against them as being improper, and repeated balances have been struck from such books, of the partnership accounts, the master, in stating the partnership account, will be warranted in holding that such books contain a true statement of the partnership affairs, and in adopting the various entries therein made.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding.

This was a bill filed by Joseph Gregg, against George M. Hord, for an accounting between them, as partners. The business in which the firm was engaged was that of buying grain in Chicago, and shipping the same to southern markets to fill orders, or for sale on consignment. The business was carried on from November 1, 1881, to May 1, 1886. The following is the agreement of co-partnership:

"CHICAGO, ILL., *Nov. 1, 1881.*

"The undersigned, George M. Hord and Joseph Gregg, have this day formed a partnership for the transaction of a legitimate commission business, based on cash orders, George M. Hord to furnish the capital required, and to pay all office and

clerical expenses and stationery bills,—profits and losses to be ·equally divided, after paying costs of telegrams and other expenses incident to the cash business. This partnership will last for five years, unless sooner dissolved by mutual consent or by death of one of the contracting parties,—Joseph Gregg to give his entire time and attention to the business. As a protection to George M. Hord against losses, Joseph Gregg shall each year leave undrawn $1000 of his share of the profits, which shall accumulate as additional capital until the termination of this contract, when the amount shall be paid over to Joseph Gregg.                    GEORGE M. HORD,

JOSEPH GREGG."

George M. Hord was also a member of the firm of Hord Bros. & Co. The accounts of the commission business of Gregg & Hord were partially kept on the books of the latter firm, under the headings of "Joseph Gregg, special," or of "Southern shipping account." Hord, during the partnership, was engaged in the commission business on the Chicago Board of Trade, to which he gave his entire attention. The accounts, so far as kept in the books of Hord Bros. & Co., relate only to the receipt and expenditure of money, and these books were balanced every six months, and were at all times open to the inspection of Gregg.

The case was referred to the master, to take the evidence and state an account, and report the same to the court, together with his finding. The master's report found there was due from Gregg to Hord $2762.77. Both parties filed exceptions to the report, which were severally overruled, and decree rendered in accordance with the finding of the master. Complainant appealed to the Appellate Court, where the decree was affirmed, and he prosecutes this further appeal.

Messrs. F. J. SMITH & HELMER, for the appellant.

Mr. E. A. OTIS, for the appellee.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

The questions presented by this record are principally questions of fact, and arise upon exceptions to the report of the master. The first exception was that the master found the firm was dissolved by the act of the complainant, and not with the consent of the defendant. We think the evidence fully warranted him in such finding. On the 30th of March, 1886, complainant had an interview with defendant with relation to his leaving the firm. On the next day he wrote the defendant as follows: "As I told you yesterday, a certain party has offered me ample capital if I would start in business on the 1st of May next. I have given the matter careful consideration, and have concluded to embrace the opportunity and leave your firm on the 1st of May next, or sooner, if we can't get along pleasantly till then." In connection with the other facts and circumstances proved, this letter, we think, warranted the finding of the master and the decree of the court approving the same.

The second exception is to the finding of the master that the complainant was not entitled to any credit for office and clerical expenses and stationery bills, which had been charged to the "Southern shipping account" by the defendant, as it is claimed, in violation of the partnership agreement. It appears that the "Southern shipping account" was charged with various sums of money paid for salaries of clerks, book-keepers, errand boys, stenographers, etc., aggregating $4095.05, and it is contended, that as it was stipulated in the original articles of co-partnership that Hord was to pay all office and clerical expenses and stationery bills, this sum should have been charged to him, and not to the shipping account of Gregg & Hord, and that as the master adopted the entry from these books of account, Gregg was thereby compelled to pay one-half of these charges wrongfully, and that the court erred in approving the report of the master in that respect. All the

items of the account to which objection is made were entered in the books in which the partnership accounts were kept, and to which Gregg had constant and unlimited access, and of which entries he had knowledge, and to which he made no protest or objection, so far as shown by this record, until after he had determined to leave the firm for a better situation. It was contended by appellee that the written agreement of co-partnership was modified subsequently to its execution, so that the firm was to be charged with the items entering into this account, and he and his two sons so testified, while, on the other hand, appellant positively denies that fact. It would seem that the preponderance of the evidence upon this point is with the defendant below,—at least, it can not be said, upon this record, that the court erred in finding the fact as found by the master. The fact that complainant knew of such charges, and made no objection, affords strong corroboration of the evidence of defendant, and would seem, of itself, to be a circumstance tending strongly to show that the office and clerical expenses were rightfully charged to the firm. In *Stuart* v. *McKichan*, 74 Ill. 122, this court said: "The partnership books of account are presumed to contain a true history of the business, and a true record of the transaction between the partners. In the absence of proof to the contrary, reliance is properly placed on such books." In Collier on Partnership, sec. 210, it is said: In ordinary partnerships nothing is more clear than this: "that although partners enter into a written agreement, stating the terms on which the joint concern is to be carried on, yet if there be a long course of dealing, or a course of dealing not long, but still so long as to demonstrate that they have all agreed to change the terms of the original written agreement, they may be held to have changed those terms by conduct." (See, also, Story on Partnership, sec. 192; *McCall* v. *Moss*, 112 Ill. 493.) We are of opinion that the court below was authorized to approve the accounting upon

the basis of the entries in the books, without regard to the stipulation in the original articles of partnership.

The third exception is, that the master found the complainant was not entitled to credit on account of the discounts and interest charged to the "Southern shipping account" of the firm. The complainant insists that the defendant did not furnish the capital as required by the original agreement, and that on account of such failure it became necessary to discount drafts against merchandise sold and consigned, and that large amounts of money were paid out for such discounts and charged to the "Southern shipping account," and that complainant was entitled to credit for one-half thereof. It is insisted, also, that this was rendered necessary by a failure of the defendant to furnish money to carry on the business of the firm, as by the article of co-partnership he was bound to do. It is only necessary to say that the item of interest charged, $400, was not incurred for want of any capital with which to carry on the business. The items going to make up that amount were the cost and expense of converting drafts drawn against shipments, into money at Chicago. Hord's testimony shows, uncontradicted upon this point, that on many occasions where grain was shipped to a customer, and drafts drawn and negotiated at the Chicago banks, the parties to whom shipment was made refused to receive the grain, and allowed the drafts to be protested. For the period these drafts were held by the banks beyond the usual time to collect them, interest was charged and paid thereon. It clearly appears that Gregg knew of such charges, and made no complaint that they were not proper charges against the firm, and what is said in respect of the second exception applies with equal force here. Both parties having daily access to the several books of account in which the firm accounts were kept, and having struck repeated balances of the partnership accounts, without complaint or objection until after the dissolution, the master was warranted in holding that the books contained the true state-

ment of the affairs of the partners as between themselves, and in computing the balance as shown upon the books.

We have carefully examined the evidence in this case, and are satisfied that the decree is fully justified, and, finding no substantial error, the decree must be affirmed.

*Decree affirmed.*