SARAH E. DONALDSON, Exrx., Appellant, *vs.* OLIVER DON-
ALDSON, Appellee.

*Opinion filed December 15, 1908.*

1. ACCOUNTING—*books of partnership, as between partners, are
presumed to be correct.* The books of a partnership, to which all
the partners have or are entitled to have access at all times, are
equally binding upon all the partners, and as between them the
books are presumed to be true and correct until the contrary is
shown and to form a proper basis for stating partnership account.

2. SAME—*rule that the partnership books are binding does not
apply to loose sheets.* The rúle as to the *prima facie* correctness
of partnership books, as between the partners, does not apply to
loose sheets in the handwriting of one partner and not shown to
have been a part of any book or kept and treated as accounts of
the firm, or that they were seen by any other partner during the
existence of the partnership, and they are not competent evidence
in a proceeding for accounting.

3. SAME—*partnership books only prima facie correct.* While
books of account of a partnership are *prima facie* correct as be-
tween the partners they are not conclusive, and if they cover but
a part of the partnership existence and are shown to be so full of
errors as to destroy confidence in their correctness they are not a
proper basis for a decree in accounting.

4. SAME—*when bill and cross-bill in accounting should be dis-
missed.* If the evidence in a proceeding for partnership account-
ing, in which a cross-bill has been filed, leaves the account in such
doubt and uncertainty that a court is unable to say whether any-
thing is due from either partner and how much, the only course
open is to dismiss the bill and cross-bill for want of equity.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Circuit Court
of Cook county; the Hon. LOCKWOOD HONORE, Judge,
presiding.

GEORGE W. BARKER, for appellant.

FRANCIS E. CROARKIN, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

In June, 1865, three brothers, Robert Donaldson, Samuel H. Donaldson and Oliver Donaldson, formed a partnership in the city of Chicago to carry on the business of ship-smith and ship-carpenter, and that partnership continued until the death of Robert Donaldson, in September, 1883. After his death the two surviving brothers purchased his interest from the administratrix, and they continued the business as partners until November 5, 1901, when the partnership was ended, except as to collecting some outstanding accounts and paying some bills. There does not appear to have ever been any settlement of the partnership affairs or any account stated between the partners. After the dissolution no claim was made by either partner against the other. Samuel H. Donaldson died in January, 1903, and Oliver Donaldson filed a claim in the probate court against the estate on a note given to him by Samuel for $1500. After the allowance of that claim Sarah E. Donaldson, the appellant, as executrix of the will of Samuel, filed the bill in this case in the circuit court of Cook county for an accounting of the partnership affairs, and alleging that there was a balance due her, as executrix, from Oliver. Oliver Donaldson answered the bill denying that there was anything due from him on the settlement of the partnership accounts, and he also filed a cross-bill claiming that there was a balance due him and praying for an accounting and payment to him of such balance. The complainant in the original bill answered the cross-bill. The evidence of the parties was taken before a master in chancery, who was directed to take and report the evidence together with his conclusions. The executrix produced before the master a book of the partnership, beginning in January, 1891, more than seven years after the partnership was formed, purporting to show the expenses paid, the cash receipts and

withdrawals of money by Oliver Donaldson, and enclosed in this book there were seven loose sheets purporting to show Oliver Donaldson's withdrawals of partnership profits. Oliver Donaldson introduced three books of the partnership, three bank pass-books showing deposits in bank and canceled checks, and paid bills, but there was no evidence of the state of accounts or the business of the partnership up to January, 1891. The master began his statement of account at that date, and reported that there was no evidence that any books or memoranda of the business were kept prior to that time; that no account of the withdrawals of Samuel was shown to have been kept; that he found from the bank pass-book there was a balance in bank to the credit of the firm on December 29, 1890, of $1224.71, and on January 10, 1891, a further credit of $2320.70, neither of which was entered on the books; that these credits could only be accounted for as collections for work done prior to January, 1891, and that it was impossible to reconcile the pass-books with the accounts on any other hypothesis than that the moneys were from time to time withdrawn by check and divided without keeping any memorandum. He found the books in an unsatisfactory condition; that a number of bills of the firm marked "paid" had been entered on the collection account and some were not found in the collection account and some bills for expenses shown to have been paid were omitted from the expense account, but he concluded that the books were honestly kept by persons not versed in proper methods, and that they were designed to and did show a substantial condition of the accounts, or furnish data from which a fairly accurate account might be stated, during the period covered by the books. He therefore stated an account during that period and found a balance of $1921.94 against Oliver Donaldson, and recommended a decree in favor of the executrix, and against Oliver, for such sum. The court heard the cause on exceptions to the report and overruled the exceptions and entered a

decree in accordance with the recommendations of the master. Oliver Donaldson appealed to the Appellate Court for the First District, and that court being of the opinion that the evidence left the partnership accounts in such doubt and uncertainty that it was impossible to determine the true state of the account or to do justice between the parties, reversed the decree and dismissed both the bill and cross-bill for want of equity. From the judgment of the Appellate Court this appeal was prosecuted.

There is no evidence with respect to the accounts or books of the firm from September, 1883, to January, 1891, and there is nothing in the record from which the master could determine that the accounts had been settled and adjusted up to that time. There is nothing to indicate that books or accounts were not kept, but they were not produced, and the master reported that it was assumed by both parties that prior to January, 1891, the business had been settled between the parties. The fifth exception to the report recited that statement of the master and made it the basis for an exception, on the ground that there was nothing in the record to justify such an assumption. We are unable to find any stipulation or agreement sustaining the statement, and must assume that it was made merely because no evidence of books or accounts was introduced prior to that time. The books and accounts which were offered were kept by Samuel Donaldson and his son, and the executrix, after the death of Samuel, had innocently destroyed a large number of checks, paid bills and papers of the partnership. There was a balance in the bank, as found by the master, of $1224.71 on December 29, 1890, and a further credit of the partnership on January 10, 1891, of $2320.70, and on February 1, 1891, the bank books showed a balance belonging to the partnership of $3298.47. There is no evidence what became of that money and no ground for the assumption that it was drawn out by check from time to time and divided between the partners. The seven loose

sheets consisted of bill-heads and letter-heads of the partnership, and purported to show the withdrawal of moneys by Oliver Donaldson from December 10, 1898, to the close of the partnership. The books of the firm, although kept by Samuel and his son, were the books of the partnership and were admissible in evidence. (*O'Brien* v. *Hanley*, 86 Ill. 278.) The books of a partnership to which all the partners have or are entitled to have access at all times are equally binding on all the partners, and as between them they are presumed to be correct, and to contain a true history of the business and a true record of the transactions between the partners. The books were open to the inspection of Oliver at all times, and he knew, or might have known, whether the charges were correct, and they are presumed to be true and correct until the contrary is shown and to form a proper basis for stating the partnership account. (*Stuart* v. *McKichan*, 74 Ill. 122.) That rule, however, does not apply to these loose sheets, which were not a part of any book and which were not shown to have been in the book during the existence of the partnership. They were in the writing of Samuel, and it does not appear that anyone saw them until after the partnership was closed. A son of Samuel saw them some time afterward, before the death of his father, and so far as appears they may have been made before or after the partnership ended or taken from some other book not produced. There were blank pages in the book where the entries might have been made and where it would be natural to make the entries if they were designed as a book account. There was not sufficient evidence to justify the admission of the loose sheets in evidence.

    While the books of account were *prima facie* correct, they were not conclusive, and a great many errors were shown resulting in stipulations between the counsel as to the items. The master found that there were many errors in the books, both in the amounts of entries and in addi-

tion; moneys collected sometimes in the name of the vessel for which the work was done, sometimes in the name of the owner and at other times in the name of the captain or some other party in interest, thus leading to confusion in the examination of the books. It is apparent that the master did the best that could be done towards stating an account from January, 1891, to the dissolution of the partnership, but it is equally apparent that his final conclusion as to a balance due from Oliver on the whole account was a matter of mere conjecture. The books only covered a part of the business of the partnership, and the bank books showed a large amount of money on hand to the credit of the partnership at the time the books began which does not appear in any way on the books. What became of that money was not shown; and furthermore, the books and accounts were so full of errors, which were pointed out, as to destroy confidence in their correctness as a proper basis for a decree. In a case of this kind, if the evidence leaves the state of the account in such doubt and uncertainty that a court is unable to say whether anything is due from either partner, and how much, it is manifestly impossible to do justice between the parties and the only course open is that adopted by the Appellate Court. *Vermillion* v. *Bailey,* 27 Ill. 230.

If the loose sheets are omitted the decree cannot be sustained, and they were in the handwriting of Samuel, and there was not the slightest evidence that they were kept as accounts of the firm while it was in existence or were treated as such accounts or that Oliver ever saw them. Further evidence was necessary to give them the standing of books of account, and they must be rejected as evidence. The assumption that there was a settlement to January, 1891, has no support in the record, but, on the contrary, there was then a considerable balance in bank, which is only disposed of by an hypothesis that it might have been divided.

The Appellate Court did not err in dismissing the bill and cross-bill, and the judgment of that court is affirmed. Neither party sustained the claim made of a balance due, and each will pay half the costs.        *Judgment affirmed.*