*In re* MARRIAGE OF VERA L. CORAM, Petitioner-Appellee, and GLENNY WAYNE CORAM, Respondent-Appellant.

Fifth District   No. 78-496

Opinion filed July 24, 1980.

Richard Kruger, of Kruger & Foster, of Metropolis, for appellant.

Guy M. Lahr, III, of Metropolis, for appellee.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:
Respondent, Glenny Wayne Coram, appeals from the judgment of the Circuit Court of Massac County dividing marital property and

awarding maintenance, child support and attorney fees to petitioner, Vera L. Coram, following the dissolution of the parties' marriage.

The parties were married March 5, 1951, and were the parents of eight children. On October 17, 1977, the date of the first hearing on the petition relating to the dissolution of marriage, only three minor children were at home. They were 17, 16 and 14 years of age. Petitioner is a housewife who has worked parttime as a waitress and who also sold Tupperware and Avon products. She testified that she was 45 years of age and that she has some medical problems and is unable to lift more than 12 pounds; however, she stated that she otherwise was willing and able to work. Respondent is employed as an outside salesman by Dealer Tire and Supply of Paducah, Kentucky. Respondent was 44 years of age at the time of the hearing, and his average monthly net cash salary was $1,237, although there were seasonal fluctuations in the actual monthly income.

The property of the parties consisted of the marital home, respondent's pension plan, Dealer's Tire and Supply Company stock, two automobiles, two bank accounts and various household furnishings. Respondent testified that the marital home was worth $25,000 and that $4,301.43 remained unpaid on a mortagage on the home. The house payments were $48 per month. Respondent's pension plan with Dealer Tire and Supply had a value of $24,773 and will become available to respondent at age 65 according to the testimony of Dealer Tire and Supply Company's office manager. Whether the pension will be paid in a lump sum or monthly payments is to be determined by the company. Respondent also acquired stock in Dealer Tire and Supply Company valued at $4,078, which was purchased by $23 per month deductions from his paycheck. Respondent also had two life insurance policies. One policy, acquired through the company, was for $50,000, of which $25,000 was payable to respondent's employer and $25,000 to respondent's beneficiaries. The second life insurance policy was for $5,000.

The parties stipulated in open court that petitioner would receive the 1971 station wagon and respondent would receive the 1960 pickup truck. The parties also stipulated to a division of certain items of personal property, and petitioner was to receive the household goods, furniture and appliances.

Petitioner stated as to the expenses incurred by her each month. She stated that her individual expenses totaled $123.87 per month and included medicine, life and accident insurance, a medical checkup and food. The expenses incurred for the children totaled $498.57 per month. Further, certain other expenses could not be segregated and were incurred for both petitioner and the children. Petitioner testified that they were $261.14 per month. Included in the remaining expenses were the utility bills, the house payment, property taxes, home insurance and car

expenses. Respondent testified to incurring monthly living expenses of $350.50.

The trial court awarded petitioner the marital home and required her to make the balance of the mortgage payments. She was also awarded the joint bank account; and respondent was ordered to pay her attorney fees. The court further ordered respondent to pay $450 a month maintenance and $100 a month child support for each child until that child reached majority or leaves school, whichever occurs last. Respondent was awarded his pension plan, the stock in Dealer Tire and Supply, and the bank account in his name. The court also ordered that respondent retain petitioner as the beneficiary on his life insurance policy during the minority of the children and required respondent to provide medical and health insurance for the children as long as he was obligated to pay child support. The property settlement stipulation of the parties regarding the motor vehicle, household furnishings, appliances and other possessions was approved by the court and adopted as a part of its judgment.

Respondent filed a post-trial motion alleging errors in the maintenance award, attorney fees, child support and the property disposition. With respect to the maintenance award, respondent alleged that the court had failed to make the findings required by section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504(a)) to establish the propriety of awarding maintenance. The court entered a *nunc pro tunc* order on July 18, 1978, finding that maintenance was justified pursuant to section 504(a)(1) and (3) of the Act.

On appeal, respondent contends (1) that the marital property was unjustly apportioned; (2) that the award of maintenance and attorney fees was not supported by the record and (3) that the amount of child support is excessive.

Respondent initially contends that the marital property was not divided in just proportions as required by section 503(c) of the Act nor was section 503(b) of the Act properly applied.

The evidence indicates that respondent's pension plan was acquired entirely from the salary earned during the marriage. Courts in Illinois, under these circumstances, have considered an employed spouse's contractual right to a pension plan as marital property subject to division. (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.) Petitioner was awarded the home of the parties, the household furnishings, the joint bank account and was to remain beneficiary on the respondent's life insurance policy until the last child reached majority. Respondent was awarded the pension fund, the stock in Dealer Tire and Supply, his bank account and the other personal property he was to receive because of the stipulation. Respondent also had real estate valued

at $5,000 to $6,000 which he had acquired through inheritance and which was not marital property under the provisions of section 503(a)(1) of the Act. On the other hand, the home of the parties was acquired after their marriage and, therefore, constituted marital property.

■■ The two major assets which the parties held as marital property were the house and the pension plan, both of which had a value of approximately $25,000. The property division therefore was of substantially equivalent value to petitioner and respondent. A precisely equal divison of property is not required. (*In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065); and since the wife was awarded custody of the minor children, it was appropriate to award her the marital home and to award the husband other marital assets. Thus, we find no error in this regard.

Respondent secondly contends that the award of $450 a month maintenance was improper because the order of October 31, 1977, did not specify the bases for the award as required by section 504(a) of the Act. Subsequently when it ruled on respondent's post-trial motion, the trial court entered a *nunc pro tunc* order specifically finding that petitioner was entitled to maintenance under section 504(a)(1) and (3). Respondent now argues that a *nunc pro tunc* order can be used only to correct ministerial omissions in orders and cannot be used to supply findings not made by the court in the first instance, citing *Chapman, Mazza, Aiello, Inc. v. Ace Lumber & Construction Co.* (1967), 83 Ill. App. 2d 320, 227 N.E.2d 562.

It is not necessary for us to consider the propriety of the *nunc pro tunc* order, because we do not agree that it was necessary for the trial court to specifically designate that portion of section 504(a) upon which it founded the award of maintenance. When the basis for an award of maintenance has been established in the record, explicit findings as to the statutory bases by a trial court are not required. *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641.

■ The record in the instant case reveals that the trial court in awarding maintenance to petitioner considered her financial dependence on respondent during the marriage, her inability to meet necessary expenses regardless of the allocation of a portion of the marital property to her, and her work history. Thus, the record supports an award of maintenance based upon the factors enumerated in section 504(a)(1) and (3) of the Act.

Respondent further argues that the award of maintenance was improper, given the statutory preference for property distribution over awards of maintenance, citing *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266.

■■ The evidence establishes that none of the property awarded to petitioner was income-producing property nor was it readily convertible

to cash. Petitioner was in need of a home for herself and children. She also was in need of outside funds to assist her in meeting her monthly expenses. Respondent was in a financial condition to enable him to meet his own expenses while also assisting petitioner in meeting her needs. Further, it is not necessary for a spouse to consume his or her share of marital property before being entitled to maintenance. *Reininger v. Reininger* (1978), 67 Ill. App. 3d 21, 384 N.E.2d 546.

■■ It is our opinion that the trial court's award of maintenance was not an abuse of discretion. However, based on the evidence of respondent's financial condition and petitioner's testimony as to her expenses and the expenses of the minor children, we conclude that the evidence does not sustain the trial court's award of $450 a month to petitioner as maintenance.

Petitioner testified that the expenses allocable to her totaled $123.87 per month while the expenses attributable to the three minor children were $498.57 a month. These expenses were borne out by the evidence and are set out in respondent's brief without objection or dispute. In addition to her expenses and those of the children, petitioner testified that certain expenses totaling an additional $261.14 per month were incurred by her. These expenses were for utilities, taxes, insurance, house fuel, car upkeep and gasoline, and house payments, benefiting both her and the children at home. The expenses of the petitioner plus the expenses she did not allocate to herself or the children total $385.01 per month. Therefore, the $450 monthly maintenance awarded to petitioner by the court was in excess of her needs. Additionally, petitioner testified that she was willing and able to work and has worked in the past.

Respondent testified that he had monthly expenses of $350. In 1977, respondent's average monthly net income was $1260.77, of which $23 was deducted by his employer each month for the purchase of stock. In 1975 and 1976, respondent's average monthly net income was $1115.68 and $1284.75, respectively. Based on his 1977 income, after payment of $450 per month maintainance and $300 per month child support, respondent has a net income of $487.77 a month without considering the $23 per month stock deduction.

Section 504(b) of the Act requires a consideration of all relevant factors when awarding maintenance including "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)(6).) Having determined that an award of maintenance was proper in the instant case, based on the financial resources of respondent and the needs of petitioner, we conclude that the trial court's award of $450 per month maintenance was not supported by the evidence and that an award of $300 per month is proper under the evidence.

■ Respondent next contends that the court's award of child support in the amount of $100 per month per child was excessive.

Section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 505) provides in pertinent part:

"* * * [T]he court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct, after considering all relevant factors, including:

(1) the financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his educational needs; and

(5) the financial resources and needs of the noncustodial parent or parents."

This court in *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 631, 381 N.E.2d 744, 747, stated:

"It is firmly established in Illinois that the amount of child support lies within the sound discretion of the trial court and will not be set aside unless contrary to the manifest weight of the evidence. [Citations.]"

The court concluded that section 505 of the Act had done nothing to change the law as it existed prior to its passage.

In applying the mandate of section 505 of the Act and our decision in *Raski* to the facts in the instant case, we cannot conclude that the trial court abused its discretion in awarding child-support payments of $100 per month per child. Petitioner must provide direct child support of approximately $500 per month and will be reimbursed for only $300 per month by respondent. Considering the fact that petitioner is also furnishing the expenses of a home for the children, we are of the opinion that the amount of support ordered to. be paid by respondent is reasonable and supported by the evidence.

Respondent also contends that the trial court erred in ordering him to pay child support beyond the age of majority of each child. We do not agree.

Section 513 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 513) authorizes the court to "make such provision for the education and maintenance of the child or children [of the parties], whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age." Under the provisions of section 513

of the Act, the court's authority to order the payment of expenses for the education and maintenance of an adult child would appear to be restricted to awards out of the "property" of its parents. However, section 505 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 505) provides: "* * * the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support * * *." Thus, section 513 of the Act authorizes the court to make provision for the education and maintenance of a child, and section 505 permits the court to order payments to be made out of income.

This court had occasion to consider this issue in *In re Marriage of Raski* and stated:

"In Illinois, the parents' liability for child support continues during the child's majority, and terminates when the child reaches majority. [Citations.] Although certain statutory exceptions to the common law rule exist, for instance, the support of the mentally or physically disabled and support for education expenses (Ill. Rev. Stat. 1977, ch. 40, par. 513), none are relevant to our inquiry here. The provisions of the new Illinois Marriage and Dissolution of Marriage Act pertaining to child support do not extend the parents' obligation beyond minority except in those limited situations enumerated above. In section 505 of the Act, the court may order the 'parents *owing a duty of support* to a child of the marriage to pay an amount reasonable and necessary for his support.' (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 40, par. 505.)" (64 Ill. App. 3d 629, 632, 381 N.E.2d 744, 747.)

Therefore, the trial court's award of child support extending beyond the majority of each child was not erroneous. *Cf. Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382; *In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 402 N.E.2d 348; *In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323.

■■ Respondent's final contention is that the trial court erred in awarding petitioner attorney fees and that the amount he was ordered to pay was not supported by the evidence.

The trial court, after hearing the evidence with respect to the financial resources of both parties, concluded that petitioner was financially unable to pay her attorney fees while respondent was. An award of attorney fees rests within the sound discretion of the trial court and we do not find an abuse of discretion in the case at bar. With respect to the amount of attorney fees awarded, the record establishes that the court had sufficient evidence as to the type and amount of work performed to fix the amount of petitioner's attorney fees. The evidence in the record fully supported the award of $771.20 in attorney fees.

852

For the foregoing reasons, the judgment of the Circuit Court of Massac County is affirmed as modified.

Affirmed as modified.

JONES, P. J., and KARNS, J., concur.