*In re* MARRIAGE OF LILLIAN B. WESTPHAL, Petitioner-Appellee, and ERNEST WESTPHAL, Respondent-Appellant.

Third District    No. 81-1

Opinion filed August 31, 1981.

Theodore J. Bednarek, of Troha, Troha & Bednarek, of Joliet, for appellant.

John F. Wols, of Stefanich, McGarry & Wols, Ltd., of Joliet, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the decision of the court and the following opinion:

This appeal arises as a result of a dissolution granted by the Circuit Court of Will County. Three issues have been raised for our review: (1) the extent to which business assets are properly classified as marital assets; (2) the justification for an award of maintenance; and, (3) the correctness of an order requiring payment of attorney fees. We shall consider each issue after a brief statement of facts.

Ernest Westphal was first married to Lillian Westphal on July 17, 1955. That union ended in divorce on November 29, 1972. During a brief period that followed, while he was unmarried, Mr. Westphal entered into business as a self-employed tool and die maker. In so doing, he invested approximately $1,600 which was directed toward the purchase of tools and equipment used in the business. Shortly thereafter, on July 26, 1973, the parties remarried.

After his remarriage to Lillian, Mr. Westphal continued to operate his business and to acquire more tools and equipment. In addition, a marital residence was acquired. In 1976 the Westphal tool and die proprietorship was incorporated to allow a trusted employee to participate in the ownership of the business. At that time no ownership interest was shown in Mrs. Westphal's name. Subsequently, on May 9, 1980, Mrs. Westphal petitioned for a dissolution of her second marriage to Ernest.

In the hearing on Mrs. Westphal's petition the circuit court heard evidence that Westphal Tool and Die, Incorporated, was valued at $25,000 and that the value of the marital home was equal to $60,000. Further, there was evidence presented that at the time of the hearing Mrs. Westphal's employment as a practical nurse earned her $135 per week, while her living expenses were between $802 and $979 per month. This was in contrast to evidence presented which placed Mr. Westphal's income at $24,000 annually. Finally, the court learned that Mrs. Westphal suffered from hypertension and osteoarthritis, the latter condition impairing her ability to work as a practical nurse.

Upon the closing of each party's respective case, the circuit court announced its decision. It was determined that both the marital residence and the corporate business were marital assets, and each party was awarded one-half of each of these major marital assets. Also, Mr. Westphal was ordered to pay maintenance to Mrs. Westphal for two years at a rate of $50 weekly and to pay for Mrs. Westphal's attorneys fees in the

sum of $1,000. Mr. Westphal is the appellant here and urges us to review and reverse these determinations made in the proceeding below.

■■ It is Mr. Westphal's contention that the circuit court incorrectly determined that his interest in the tool and die corporation was marital property and thus subject to equitable apportionment. (Ill. Rev. Stat. 1979, ch. 40, par. 503(b).) Mr. Westphal reasons that he began his proprietorship in 1972 prior to his remarriage, and thus the proprietorship assets were and remain nonmarital. Further, he reasons that the mere change in form of ownership from a proprietorship to a corporation should not affect the nonmarital character of the business assets. For this proposition, the appellant-husband directs our attention to *In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 407 N.E.2d 1045. Having considered this analysis offered by the husband, we conclude that the contrary analysis of the circuit court more accurately assesses the marital/nonmarital character of Mr. Westphal's interest in the corporation.

In prior decisions analyzing the character of sole proprietorship property, the courts of this State have held dispositive not the date when the sole proprietorship was commenced, but rather the date when individual assets employed by the proprietor were acquired. For example, in *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762, even though the husband operated a farm as a sole proprietor prior to his marriage, it was held that proprietorship assets, *i.e.*, tools, equipment and livestock, purchased during the term of the marriage, were marital in character. We believe the same rule should apply to the instant facts. While the tools and equipment purchased with Mr. Westphal's $1,600 investment prior to the remarriage were nonmarital assets, those items purchased after remarriage would not share that characteristic.

The record suggests that tools and equipment were purchased for use in the proprietorship after the remarriage of the parties in 1973, and those marital tools and equipment were commingled with the nonmarital tools and equipment previously acquired. In a recent decision, we held that a commingling of marital and nonmarital assets results in transmutation of the entire property into marital property. (*In re Marriage of Lee* (1980), 88 Ill. App. 3d 1044, 410 N.E.2d 1183.) Applying the *Lee* decision to the facts before us, we are compelled to conclude that the commingling of the nonmarital proprietorship assets with the later acquired marital proprietorship assets resulted in the characterization of all proprietorship assets as marital property. Mr. Westphal correctly asserts that the mere change in form of ownership should not alter its marital/nonmarital character, but the uncontroverted facts suggest that when the proprietorship assets were incorporated in 1976, the assets were marital in character because of commingling. It follows then that the resulting interest of Mr. Westphal in

Westphal Tool and Die, Incorporated, was marital in character and subject to equitable apportionment by the circuit court.

We have reviewed the cases primarily relied on by the appellant and do not find those authorities inconsistent with the result we reach. The supreme court has established that the increase in value of nonmarital property acquired before and during the marriage is also nonmarital property. (*In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305.) The rule of *Komnick* could be applied to the case *sub judice* if the nonmarital assets, the $1,600 worth of tools and equipment, had not irretrievably lost a separate identity through commingling. Such were the facts in a case cited by Mr. Westphal, *Davis v. Davis* (Mo. App. 1976), 544 S.W. 2d 259. In *Davis*, the nonmarital asset was corporate stock, and because that stock retained a separate identity, it remained nonmarital in character as did its increase in value during the term of the marriage. As the facts before us differ, we find that neither *Komnick* or *Davis* are controlling.

■■■ After reviewing the record, we find support for the circuit court's award of maintenance to the appellee-wife. Evidence presented regarding Mrs. Westphal's reasonable needs clearly demonstrates that her income is inadequate to provide for her support, and given the earning capacity and health of the parties, an award of $50 weekly is not unreasonable. Mr. Westphal urges that the award of maintenance overlooks the award of one-half of the marital property to the appellee. We disagree and find the cases relied on by the appellant factually different. In one case, an award of marital property many times the value of the instant award justified denial of maintenance. In another case, the relative incomes of the parties justified denial of maintenance. And, in a third case, maintenance was allowed thereby offering no support for appellant's position. Additionally, the law does not require a spouse to consume her share of marital property before being entitled to maintenance. (*In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 408 N.E.2d 418.) Since some deference is due the decision of the circuit court in these matters— maintenance awards will not be set aside unless contrary to the manifest weight of the evidence—we deem the evidence sufficient here and the award of maintenance is affirmed. *Pacione v. Pacione* (1980), 81 Ill. App. 3d 600, 402 N.E.2d 316.

■■ Finally, we must conclude that the circuit court's order requiring Mr. Westphal to pay a portion of the attorney fees incurred by Mrs. Westphal was in error. Generally, in order to justify the allowance of attorney fees, one must show a financial inability to pay. (*In re Marriage of Rogers* (1980), 86 Ill. App. 3d 904, 408 N.E.2d 448.) Inability to pay does not suggest an absolute lack of funds, but rather a situation where payment

would undermine the party's economic stability. (*In re Marriage of Scott.*) In light of the property settlement ordered by the court below, we believe no such economic instability would result if Mrs. Westphal paid her own attorney.

For the reasons above stated, and in reliance on the authorities hereinbefore set forth, we affirm in part and reverse in part this judgment of the Circuit Court of Will County.

Affirmed in part; reversed in part.

Mr. JUSTICE ALLOY, specially concurring:

I concur in the result in the above case but not in the portion of the opinion which states that we are compelled by the decision in *In re Marriage of Lee* (1980), 88 Ill. App. 3d 1044, 410 N.E.2d 1183, to conclude that commingling of nonmarital property with later acquired marital property results in a "transmutation" of the entire property into marital property. I believe that the application of equitable apportionment is, as stated by Justice Stengel in his special concurrence in *In re Marriage of Lee*, a sound basis for establishing property rights in dissolution of marriage cases. The Marriage and Dissolution of Marriage Act makes no provision for the transmutation theory. We should not adopt a legal fiction, so long as equity and justice can be achieved by other means. As Justice Stengel stated, the same result could be reached by apportioning the property so as to allow credit for the contribution of each party to the improvement of the nonmarital property.

I have also expressed my view on this issue in my special concurring opinion in the case of *In re Marriage of Crouch* (1980), 88 Ill. App. 3d 426, 410 N.E.2d 580. I will not repeat the special concurrence in *Crouch* in its entirety. I noted that, as I read the Illinois statute, it was not contemplated that the courts should surrender the basic equitable power vested in the courts in making equitable distributions of property in the event of dissolution of marriage. I pointed out that it was notably clear from the provisions of section 503(c) of the Marriage and Dissolution of Marriage Act that the courts are directed to divide property in just proportions considering all relevant factors, including the contribution of each party in the acquisition, preservation, or depreciation or appreciation in value of the marital and nonmarital property. I reiterate that there is no lack of authority in the court to do justice in cases such as we are now considering, without indulging in any procedure which would "transmute" property simply by virtue of commingling of any such property. I also repeat that the power of our courts to do equity in all cases is not, and should not, be rigidly limited by classification of the property as marital or

nonmarital. Consequently, I concur in the result in the instant case, but not in the application of the transmutation theory.

Mr. Justice Heiple joins in the special concurrence of Mr. Justice Alloy.