*In re* MARRIAGE OF LOUELLA SMITH, Petitioner-Appellee, and RAYMOND SMITH, Respondent-Appellant.

Third District   No. 81-288

Opinion filed April 15, 1982.

ALLOY, J., concurring in part and dissenting in part.

Bernard C. Gillman and Dorothea O'Dean, both of Rock Island, for appellant.

Peter C. Fieweger, Samuel S. McHard, and John C. McAndrews, all of Katz, McAndrews, Durkee, Balch & Lefstein, of Rock Island, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Petitioner Louella Smith filed a petition for separate maintenance, which was amended to a petition for dissolution of marriage. After a bifurcated hearing on the merits, the circuit court of Rock Island County

granted the petition and made the award of maintenance and division of property which are the subjects of this appeal.

The Smiths were married in 1950 and have seven children, two of whom are minors. Petitioner, 50, is in good health and is employed as a free-lance correspondent for the *Rock Island Argus*, where she earns approximately $2,600 per year. She is also the village clerk of Coal Valley and earns $1,000 per year in this capacity. Respondent, 51, is a borderline diabetic and is employed as a serviceman for Iowa-Illinois Gas and Electric Company, where he earns approximately $26,500 per year. Petitioner has been employed by the *Argus* since 1962 and has also had other positions. Respondent has been employed by Iowa-Illinois since 1951.

The Smiths' marital property totalled approximately $136,000. While we find it unnecessary to detail the various properties set forth in the trial court's memorandum opinion, we do note the presence of two residences which are currently occupied by daughters of the parties. Amy Goswick is in possession of a home in Coal Valley which the Smiths purchased for her in 1974 or 1975. The parties made a $3,500 down payment and assumed a $11,500 mortgage. Amy and her parents have an oral agreement under which she is responsible for the payments on the mortgage and will be deeded the residence "when she can pay back the downpayment." Her former husband currently makes the mortgage and insurance payments, and when he falls behind, the Smiths make them and adjust the debt's principal accordingly. Jody Peterson is in possession of a home in Moline which the parties purchased for her in 1979. The Smiths made a $12,000 down payment and assumed a $39,000 liability on a contract for deed. The arrangement between Jody and her parents is essentially the same as with Amy; however, there is a written agreement between the Smiths and Jody and her former husband waiving repayment of the $12,000 for five years. The court found the above receivables were marital property.

The Smiths' total net income approximately equaled their monthly needs. Petitioner's needs were approximately $900 per month and respondent's, approximately $800 per month. The court, noting petitioner's income of approximately $300 per month, awarded her a rental property producing $200 in monthly income, $225 per month child support, and $200 per month maintenance. Noting the length of the marriage and petitioner's contributions to the family unit, the court found an equal division of marital property to be equitable. Property valued at approximately $84,000 was awarded to petitioner, with property valued at approximately $52,000 being awarded to respondent. As this was not the adjudicated equal division of marital property, approximately $16,000 of petitioner's award was designated property in lieu of 80 months' maintenance. On appeal, respondent contends the award of maintenance and division of marital property constitute abuses of discretion.

■■ Considering first the award of maintenance, the thrust of respondent's contention appears to be that petitioner has many skills and talents which would make her a desirable employee "who would be well able to work full [t]ime and to support herself * * *." Two points are here germane. In addition to her present positions, petitioner has been employed as a census enumerator, a "Project Now" intake worker, and a holiday season retail clerk. Her greatest gross hourly wage has been $3.25. Considering this and her age, it is improbable that petitioner could so support her family unit. The second point is that she was granted custody of her 10-year-old daughter, who has had emotional problems requiring professional assistance. Section 504(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 504(a)(2)) requires the consideration of whether a party seeking maintenance is "the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." Considering these two points, and the fact that petitioner will have to manage a rental property and serve in an elected office, we find an award of maintenance to supplement the income from two part-time jobs to be appropriate. Respondent alternatively contends the award should be reduced. Not only is the award similar to that sanctioned where income and expense were much the same (*cf. In re Marriage of Westphal* (1981), 99 Ill. App. 3d 1042, 426 N.E.2d 303 ($50 per week for two years)), the award is the minimum amount necessary for petitioner to meet her expenses. We find the trial court considered the factors enumerated in section 504 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 504) and wisely exercised its discretion.

Considering last the division of marital property, the thrust of respondent's contention is that he should have been awarded more than half of the property as he was the primary financial contributor to the marriage, and that he was not even awarded half. The Act does not mandate an equal division of marital property (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238), and our supreme court has addressed the matter of financial contribution:

> "While we perceive some difficulty in assessing the value to be placed on the different forms of contribution, we caution against placing too much emphasis on monetary contributions over non-monetary contributions. At all times, the court is to keep in mind that the ultimate objective is to achieve a division of property which is in 'just proportions.' " (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 38, 411 N.E.2d 238, 242.)

Citing *Aschwanden*, the court further stated that a trial court "must recognize substantial contributions made by a spouse as homemaker and parent" and that "[t]he decision in essence recognized the importance of viewing the marital relationship as a shared enterprise upon which the

distribution of marital property should be based." *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 94, 417 N.E.2d 1305, 1308.

■■ The trial court considered the factors enumerated in section 503(c) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) and concluded that an equal division of marital property represented a just apportionment. It took into account, *inter alia*, the 30-year marriage, petitioner's role in raising seven children and as homemaker to the family unit, and her limited opportunity for future acquisition of assets and income. Considering these factors and the caution against placing too much emphasis on monetary contribution, we find an equal division of marital property to be an appropriate exercise of discretion. The court awarded both the family home and the rental property to petitioner as it found these transfers resulted, respectively, in reduced expense and added income to her. This caused an unequal distribution; however, the fact that respondent is excused from 80 months of maintenance restores the equality of the overall settlement.

■■ The final matter presented for our consideration concerns certain specific assets. These include the "receivables" due from the Smith children and the residences occupied by the daughters. Before reaching this matter we must address petitioner's contention that consideration of these matters has been waived for failure to mention them in respondent's motion to reconsider. Except as otherwise provided, the provisions of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 1 *et seq.*) apply to these proceedings. (Ill. Rev. Stat. 1979, ch. 40, par. 105(a).) Supreme Court Rule 366(b)(3)(ii) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(b)(3)(ii)) provides that neither the filing of, nor the failure to file, a post-trial motion limits the scope of review of a nonjury case. Under its power to make rules (Ill. Rev. Stat. 1979, ch. 110, par. 2) and pursuant to its policy of covering matters of appellate procedure by rule (see Ill. Ann. Stat., ch. 110, par. 68.3, Supplement to Historical and Practice Notes, (Smith-Hurd 1981 Supp.)), the court moved this provision from the Civil Practice Act to the rules. We therefore find it applicable and will not limit our review.

Approximately 51% of the marital property awarded to respondent consisted of debts of the Smith children. We have previously discussed the debts of Amy and Jody and note that, not only are they interest free, neither of the principal amounts are being repaid. In addition to these debts, a third daughter, Louella Heiman, received a $6,000 loan for the down payment of a home in Fort Dodge, Iowa, and a son, Randy Smith, received a $5,000 loan. In order to extend the loan to Louella, respondent himself was forced to borrow $4,000 which he is presently repaying to the Orion State Bank.

Three factors are here noteworthy. The first is that the loans produce neither income in the form of interest nor revenue in the form of repayment of principal. This situation follows from the second factor, which is

that the loans are not the result of arm's length transactions. They are rather the result of caring parents attempting to help their children, and it could even be argued that the transactions were in the nature of gifts. Regardless of characterization, it is clear the monies were jointly advanced by both parties. The third factor is that respondent might be forced by economic circumstances to demand payment from his children and, to the extent the loans may be enforceable obligations, to initiate litigation.

There is an additional consideration. While the trial court expressly found it was preferable to terminate all the parties' joint estates, this was not done in the cases of the daughter-occupied residences. There are thus no contingent dispositions of the properties in the event of surrenders of possession. There are also no contingent provisions in the event of defaults in the monthly payments. The latter situation might translate into a down-payment forfeiture in the case of the contract property, and personal liability of both parties in the case of the mortgaged property.

Considering the three factors concerning the loans and the daughter-occupied residences, we believe the trial court abused its discretion in dividing the marital property as if the obligations from the daughters represented bona fide accounts receivable with values established with equal certainty to other marital assets. Since the daughters' obligations were of doubtful value, both parties should share in the risks of the uncertainties existing with such risks to be adjusted or compensated for in the disposition made of other items of marital property. As the underlying transactions were jointly entered into by the parties, and the present award gives respondent questionable assets which threaten to place him in an adversarial relationship with his children, we find that the court failed to consider "all relevant factors" (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)) in dividing the marital property herein.

We therefore remand this cause to the trial court so that the "receivables" may be awarded to the parties in approximately equal proportions, and the overall settlement adjusted accordingly. At this time, we direct the court to provide for the contingencies discussed herein and to award the bank stock earlier overlooked.

Accordingly, the judgment of the circuit court of Rock Island County is reversed and remanded for further proceedings consistent with our views herein.

Reversed and remanded with directions.

SCOTT, J., concurs.

JUSTICE ALLOY, concurring in part and dissenting in part:
While I agree with our decision concerning the trial court's award of

maintenance and its equal division of property, I cannot agree with the majority's treatment of the children's contract obligations to the parents.

Mr. Smith complains that he has not received an equal division of the property, because the obligations of the children are doubtful assets and he would be in the awkward position of having to sue them to recover the money in the event of the children's default. The majority agrees, and orders the trial court to reconsider the property division and award these receivables in equal proportions.

Although these receivables are not the result of arm's length transactions, there is no reason to believe these assets are weak, doubtful or worthless. The parties may have been trying to help their children, but that fact does not require any alteration in the equitable rules concerning divisions of marital property. Indeed, Mr. Smith listed these obligations as assets in his affidavits. Certainly, the trial court was entitled to treat these obligations in a similar fashion.

More significantly, the majority's position has no support in the law. The majority cites no authority, and I know of none, that requires the *risk* of diminution of value of assets to be shared equally by the former parties to a marriage. On the contrary, this doctrine could lead to inequitable results. Divorce proceedings can become entangled in collateral issues concerning the relative potential of various assets. Even the most simple property order could suddenly become burdensome. If a couple has two assets, for example, a piece of land worth $10,000 and stock worth $10,000, a trial court may no longer simply give the stock to one party and the land to the other.

Finally, even if the court were to consider the relative factors of risk in diminution of assets, the disposition here is amply supported by the evidence. As the majority's recitation of the evidence indicates, Mrs. Smith earns approximately $3,600 per year. Mr. Smith earns over seven times that amount. Mrs. Smith is 50 years old and has never earned a gross wage over $3.25 per hour. It is unlikely she will be able to earn enough even to support herself. Additionally, Mrs. Smith has custody of an emotionally disturbed daughter. Clearly, the trial court could conclude that Mr. Smith is in a far better position to withstand the default of one of the children's obligations. He is in a better position to absorb any loss as well as to institute proceedings to recover the money or property, if that becomes necessary. The majority notes that there are no contingent provisions in the trial court order in the event of a surrender of possession of the real estate. Rather than disrupt the property division, this problem can be easily remedied by directing the trial court to order conveyance of all interests the Smiths have, in the properties involved, to Mr. Smith, if this disposition is ordered.

I would affirm the judgment of the trial court.