*In re* MARRIAGE OF FRANCES A. BROWN, Petitioner-Appellant and Cross-Appellee and MICHAEL W. BROWN, Respondent-Appellee and Cross-Appellant.

Fifth District   No. 81—550

Opinion filed December 3, 1982.

Conger & Elliott, P.C., of Carmi, for appellant.

Endicott & Finch and C. William Fechtig, both of Carmi, and Marshall J. Auerbach & Associates, of Chicago, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Judgment of dissolution of the marriage of Frances A. Brown and Michael W. Brown was rendered by the circuit court of White County on December 10, 1980. Judgment on the remaining issues of property division, maintenance, child custody and child support was entered June 1, 1981. Frances Brown appeals from the trial court's decision respecting property division, maintenance and child support. Michael Brown cross appeals on the issue of maintenance. The parties do not question the judgment of dissolution nor that custody of the children was granted to Frances Brown.

The parties were married January 18, 1964, and have two children now living with their mother. During the marriage, Michael Brown's sole employment was at his father's business, Brown's Feed and Chemical Store. He started drawing a salary in 1962; in 1971 he and his father formed a partnership, each owning a one-half interest in the business. Frances Brown was not employed outside the home. Her primary responsibilities were at home as homemaker and mother. She did help the business periodically by doing bookkeeping and payroll, attending business meetings, entertaining business guests, cosigning notes and guarantees, making sales at the store and in general performing any task or errand as requested by her husband. Her actual time spent working at the business, however, was very limited.

The parties owned a significant amount of property. Much of it was acquired by Michael Brown as a partner of Brown's Feed and Chemical Store. The remaining property consists of the parties' home and miscellaneous personal property. The trial court classified these latter interests as marital and divided the property between the parties. The division of this property is not contested on this appeal.

Michael Brown's one-half interest in the partnership was classified as nonmarital property by the trial court. It was valued at $198,000. It is this part of the trial court's distribution of property that Frances Brown contests.

■■ The trial court's judgment regarding division of the property is governed by section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503). Section 503(b) of the Act states that all property acquired after marriage is presumed marital property unless rebutted with proof that the property was acquired by one of six nonmarital methods. (Ill. Rev. Stat. 1981, ch. 40, pars. 503(a)(1) through (6).) The trial court held that Michael Brown had rebutted the statutory presumption favoring marital property by proving that his one-half interest in Brown's Feed and Chemical Store was a gift from his father, Archie Brown, as provided in section 503(a)(1) of the Act.

A valid gift requires proof of donative intent and delivery of the subject matter. (*In re Estate of Duncan* (1979), 77 Ill. App. 3d 927, 397 N.E.2d 497.) In this case, donative intent is presumed because the transfer was from parent to child. (*In re Estate of Nelson* (1971), 132 Ill. App. 2d 544, 270 N.E.2d 65.) As a result, Mrs. Brown was required to present evidence that Archie Brown acted without donative intent. Although she attempted to show that Archie Brown had a business motive in transferring the one-half interest to his son, we find the argument unpersuasive. The evidence most relevant in determining Archie Brown's intent is his own testimony. He testified that he wanted his son to share in the business, "to have half the income" and to give him "the opportunity to buy the rest in case something happened to me." The testimony is indicative of a gift and was not contradicted.

Although we find the one-half interest in the partnership to be a gift and thus nonmarital property, we also hold that it was transmuted into marital property.

■■ Transmutation of nonmarital property to marital property can take place in two ways. One involves converting the separate ownership of nonmarital property into a form of common ownership. (*In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635.) The sec-

ond type of transmutation is at issue here. It involves commingling of nonmarital property with marital property, thereby converting the entire nonmarital property interest into marital property. (*In re Marriage of Westphal* (1981), 99 Ill. App. 3d 1042, 426 N.E.2d 303.) The Supreme Court of Illinois has specifically recognized the transmutation of property theory. In *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239, the court stated, "where a spouse who holds nonmarital property causes it to be commingled with marital property, or with nonmarital property of the other, we hold that the commingled property is presumed to be marital property." (86 Ill. 2d 518, 529, 427 N.E.2d 1239, 1244.) There, the parties' home was held to be marital property even though one spouse traced nonmarital property into the purchase price. Rental property acquired by the husband as settlement of his mother's estate was presumed to be marital property because improvements were made with marital funds.

In *Smith,* the court emphasized that the contribution to nonmarital assets must be by an affirmative act of the parties and not due to economic appreciation alone. Secondly, transmutation will not occur if the owner of the nonmarital property can prove that he has kept his property separate from the marital property.

The court in *Smith* pointed out that its decision effectuated the legislative purpose of the statute. Presuming transmutation of nonmarital property gives further recognition to the equal partnership theory of the Act and to the contribution of the homemaker. Further, the court found that transmutation promotes the statutory preference for classifying property as marital which, even when the contribution of the spouse is insignificant, allows for more equitable distribution of property because the pool of marital property is greater.

In *In re Marriage of Lee* (1981), 87 Ill. 2d 64, 430 N.E.2d 1030, the court used the transmutation theory to hold that the parties' home was entirely marital property even though the husband acquired the home prior to the marriage with his own funds. The transmutation theory was applicable because marital assets were used to make improvements to the home.

While it has been suggested that the decision in *Smith* has "rendered the concept of non-marital property nearly illusory" (Feldman and Becker, *Classification of Property Upon Dissolution of Marriage: Suggestions for Maintaining our "Dual System" in the Aftermath of* Smith, 71 Ill. Bar J. 100, 101 (1982)), we have reviewed the supreme court cases at length, and while the present case does not fit the factual situation of any decided case, we believe the same policies and statutory purposes require use of the transmutation theory here.

The one-half interest of Michael Brown in the partnership was nonmarital property at the time of the transfer. During the marriage, the value of the partnership has increased substantially. For the most part, the increase in value reflects the earnings of the partners that have been retained in the business. One-half of these retained earnings represent the income Michael Brown has received for his "employment" by the partnership. We hold that these retained earnings are marital property. We have held that business interests can be classified as marital property. (*In re Marriage of Westphal* (1981), 99 Ill. App. 3d 1042, 426 N.E.2d 303 (assets of sole proprietorship); *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 321 (interest in professional dental corporation); *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488 (stock in closed corporation).) Further, we fail to see any difference between the income Michael Brown receives as a partner in Brown's Feed and Chemical Store and the income one receives while employed during the marriage in any other capacity, or the income earned on nonmarital property during marriage, both clearly being marital property. *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 533, 427 N.E.2d 1239, 1246 (marital funds used to renovate nonmarital business real estate); *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, 417 N.E.2d 1305 (nonmarital farm remains nonmarital where its increase in value is the result solely of economic appreciation and not to capital improvements from marital funds); *In re Marriage of Parr* (1981), 103 Ill. App. 3d 199, 430 N.E.2d 656 (payment of loan to pay purchase price of nonmarital property from marital earnings); *In re Marriage of Reed* (1981), 100 Ill. App. 3d 873, 427 N.E.2d 282 (interest earned on nonmarital property during marriage).

In addition, the parties' home, a marital asset, was mortgaged to guarantee notes made payable to the partnership's chemical suppliers. Michael Brown testified that without settling these accounts each year, the partnership would lose the suppliers' business.

Finally, we find no evidence that Michael Brown kept the retained earnings separate from the rest of the business. As a result, the marital property (retained earnings) was commingled with the nonmarital property (the original one-half interest from Archie Brown) causing the entire property interest to be transmuted into marital property. It is well established that an asset cannot be both marital and nonmarital. *In re Marriage of Komnick.*

Our decision supports the same policies the supreme court found evident in the statute. Classifying the partnership interest as marital property gives recognition to Frances Brown's contribution as a

homemaker and to the equal partnership theory the statute espouses. Our decision also increases the amount of marital property to be divided, thus reducing the need for dependence on maintenance.

As we must reverse the trial court's determination that the partnership interest was nonmarital property, we realize that our decision upsets a carefully considered equitable division of the parties' property. Therefore, we remand the entire cause for a redetermination by the trial court. We do note that the division of the partnership interest does not have to be an equal one. The Act allows the trial court to consider the contribution of each party in the acquisition, preservation and appreciation of the property. And we note that the partnership need not be physically divided between the parties. Frances Brown may receive offsetting property or a monetary award to be paid in installments equaling her interest in the partnership. *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006.

We must also address the trial court's valuation of Michael Brown's one-half interest in the partnership. Frances Brown argues that the trial court used an incorrect amount to represent the difference in the capital accounts of the two partners and that it made a mathematical error in computing the ultimate value of the business.

The trial court set the value of the entire partnership at $550,000. This figure is not contested. To determine Michael Brown's interest, it divided the total value in half and then subtracted $77,000, representing the difference between the partners' capital accounts. The final figure was $198,000.

■ There is no question that Michael Brown's capital account was substantially less than that of his father. It is also agreed that the difference between the capital accounts should be reflected in the final value assigned to each partner's interest. The dispute involves which figure accurately represents the difference between the accounts. The December 31, 1980, financial statement of the business, which was prepared by certified public accountants based on information furnished by the partners, indicated the difference was $39,858. On the other hand, Archie Brown testified that the difference was $77,408. He based his figure on errors made in 1977 accounting and on capital contributions made in 1978 that had not been credited to his account. We feel compelled to reject the higher figure unless on remand this amount can be substantiated by verifiable accounting data. Since the partners supplied the accountants with the information necessary to prepare the financial statement and neither partner made mention of the adjustments as the reports were made, they will otherwise be bound by these statements here. See *Gregg v. Hord*

(1889), 129 Ill. 613, 22 N.E. 528.

The second problem involves the final computation of each partner's interest. The Uniform Partnership Act (Ill. Rev. Stat. 1981, ch. 106½, par. 1 *et seq.*) provides us with the correct method of computation. It states, as far as is relevant here, that the partnership assets are reduced by the total of all partners' capital contributions, this being a debt of the partnership. The remaining assets are then divided according to each partner's interest in the partnership. Applying the formula to our facts, we find that the value of Michael Brown's interest would be $255,071. According to the 1980 financial statement, Archie Brown's capital account is $110,737, while Michael Brown's is $70,879. Subtracting the sum of these figures from the value of the entire partnership, we are left with $368,384. This figure is then divided by one-half giving each partner $184,192. In summary, Michael Brown's interest is equal to his capital, $70,879, plus his one-half share, $184,192, or $255,071. Archie Brown's interest is equal to his capital, $110,737, plus his one-half share, $184,192, or $294,929. Note that this method of computation retains the $39,858 differential between the partners' capital. See *Vassallo v. Sexauer* (1970), 22 Mich. App. 188, 177 N.W.2d 470, for a similar application of section 40 of the Uniform Partnership Act.

The remaining issue involves the trial court's award of maintenance and child support. Frances Brown was awarded maintenance of $1,400 per month for five years and child support of $300 per month per child. Frances Brown contests both awards. Michael Brown contests the award of maintenance.

Under the Act, the trial court is required to consider the amount of marital property distributed to a spouse in fixing maintenance (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1)), and to consider the financial resources of the custodial parent in fixing child support (Ill. Rev. Stat. 1981, ch. 40, par. 505(a)(2)). Therefore, our reversal of the trial court's adjudication of property rights requires a re-examination of both awards.

For the foregoing reasons, the decision of the circuit court of White County finding the partnership interest to be nonmarital property is reversed and the cause is remanded for a redetermination of property division, maintenance and child support.

Reversed and remanded.

JONES and WELCH, JJ., concur.