*In re* MARRIAGE OF JUDITH M. FLORY, Petitioner-Appellee, and JAMES C. FLORY, SR., Respondent-Appellant.

First District (3rd Division)   No. 87—0730

Opinion filed June 8, 1988.

Ronda D. Taylor-Glenn, of Jennings, Novick, Eggan & Ostling, of Bloomington, for appellant.

824

Merrill B. Meyer, of Rappaport & Meyer, of Chicago, for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Judith Flory petitioned for the dissolution of her marriage to respondent James Flory. The trial court granted the petition, ordered the division of the marital property, and awarded petitioner maintenance, health insurance, and $2,500 for attorney fees. Respondent appeals.

Petitioner married respondent on December 26, 1958. The parties had two children, and petitioner also helped respondent raise his three children from an earlier marriage. All of the children were emancipated before petitioner filed for divorce in September 1985. Petitioner works as a substitute teacher. During 1986 she earned a net income of approximately $6,250. Respondent worked for Illinois Central Gulf Railroad until October 1986, when he resigned and accepted an early retirement benefit of $38,055.80 after taxes. On his sixtieth birthday, in November 1987, respondent began to receive his benefits under the Railroad Retirement Act (45 U.S.C.A. §231 *et seq.* (West 1986)). His benefits are approximately $1,250 per month. Petitioner, who is about 53 years of age, will receive a pension of $40 to $50 per month when she retires, and she will receive $368 per month in divorced spouse benefits under the Railroad Retirement Act. According to petitioner's affidavit, her expenses are approximately $2,000 per month, while respondent stated in his affidavit that his monthly expenses were approximately $1,100.

Respondent moved out of the marital home in September 1985, and he moved into Phyllis Macesich's home. Respondent purchased a Titan motor home in November 1985 for $15,000, making a down payment of $3,000. He testified at trial that Macesich supplied the $3,000, although her name does not appear on either the bill of sale or the purchase money security agreement. On October 1, 1986, respondent traded the Titan motor home for a Pace Arrow motor home. The dealer gave respondent a credit of $22,000 for the Titan against the $60,000 purchase price of the Pace Arrow. Respondent and Macesich purchased a Plymouth automobile in May 1968 for $14,000. Titles to both the Plymouth and the Pace Arrow are in both respondent's name and Macesich's name. On October 16, 1986, respondent gave Macesich a check for $3,900, which, according to his affidavit, was payment of past-due housing and auto costs, based on rents of $200 per month for his part of the home and $100 per month for use of the Plymouth. Macesich made the final payment for the Plymouth shortly

after she received this check.

Petitioner testified that she had about $10,000 worth of health insurance coverage through her employment, but she was unable to obtain additional health insurance. Respondent's attorney admitted that petitioner could be covered under respondent's group policy through his former employer.

Petitioner inherited $17,700 from the estate of Garnett Stewart, and she inherited from her father a one-third interest in a trust valued at nearly $240,000. She spent more than $7,000 of the inheritance on living expenses prior to trial. At trial respondent agreed to pay $2,500 of petitioner's attorney fees.

The trial court dissolved the marriage on February 11, 1987. The court ordered:

"B. That the respondent shall make arrangements to have the petitioner covered by the Illinois Central Gulf Hospital Association, or other comparable insurance.

C. That non-marital property shall be disposed of as follows:

TO: Petitioner, JUDITH M. FLORY

| | |
|---|---:|
| Legacy from the Estate of G. Stewar[t] | $10,000.00 |
| One-third (1/3) interest as beneficiary under trust of her late father | 79,963.00 |
| | $89,963.00 |

TO: Respondent, JAMES C. FLORY, SR.

| | |
|---|---:|
| Starcraft boat (1955) | $ 200.00 |
| Premarital allocation of severance pay | 6,570.00 |
| | $6,770.00 |
| Chest (cabinet) | No Value |

D. That the division of marital property shall be as follows:

| Item | Petitioner | Respondent |
|---|---|---|
| *Marital Home | $30,000.00 | $ - |
| Balance of Severance Pay | 10,000.00 | 12,995.00 |
| 1983 Chrysler | 9,000.00 | - |
| Household Furniture | 350.00 | - |
| U.S. Savings Bonds | 150.00 | - |
| Federal Tax Refund | 1,538.00 | - |
| State Tax Refund | 126.00 | - |
| Burial Crypt | - | 1,500.00 |
| *1974 Concord Motor Home | - | 5,000.00 |
| IRA (Hers) | 1,500.00 | - |
| IRA (His) | 1,911.00 | 1,912.00 |

| | | |
|---|---|---|
| *1985 Plymouth | - | 11,000.00 |
| Woodworking tools | - | no monetary value |
| Jewelry | no determined value | - |
| Fishing equipment | - | no ascertainable value |
| 1 Fishing Rod & Reel | no value | - |
| *$22,000 Interest in Pace Arrow Motor Home | - | 22,000.00 |
| | $54,575.00 | $54,407.00 |

*Indicates that recipient will pay balance due.
    ***

I. That the respondent, JAMES C. FLORY, SR., shall pay the petitioner, JUDITH M. FLORY, as and for maintenance the sum of $269.00 monthly for a period of seventy-two (72) months beginning January 1, 1994 (out of his Tier II RRR entitlement. ***)

J. That the respondent, JAMES C. FLORY, SR., shall pay as and for attorneys' fees the sum of $2500.00 to petitioner's attorneys, as part of her attorneys' fees ***."

On appeal respondent argues that the trial court awarded petitioner an excessive proportion of the marital assets. Respondent does not contest the valuations of any of the properties, but he contends that the court improperly decided that the Pace Arrow motor home and the Plymouth were marital assets rather than Macesich's property. Both vehicles were purchased while the parties were married. Respondent and Macesich hold title to both vehicles jointly. Respondent testified that his name appeared on the titles only because he could obtain credit and Macesich could not because she was unemployed. Respondent gave Macesich a check for $3,900 shortly before she paid off the remaining debt on the Plymouth; he testified that the check was payment for past-due rent. The trial court found this testimony incredible, as it noted that respondent earned more than $2,000 after taxes each month while his debt to Macesich mounted at the rate of $300 per month, and his affidavit did not show expenses sufficient to explain his failure to pay Macesich. The evaluation of the credibility of witnesses is primarily a matter for the trial court. (*In re Marriage of Malters* (1985), 133 Ill. App. 3d 168, 178, 478 N.E.2d 1068.) We cannot say that the trial court acted contrary to the manifest weight of the evidence when it found that respondent's $3,900 payment to Macesich was not in fact a payment for living expenses.

Since respondent earned that money during the marriage, and he used it to purchase the Plymouth, the trial court appropriately found that the Plymouth was a marital asset. (Ill. Rev. Stat. 1985, ch. 40, par. 503(a).) Similarly, we cannot say that the trial court's finding that the Pace Arrow motor home was a marital asset is contrary to the manifest weight of the evidence, since respondent's name appeared alone on the documents surrounding the purchase of the Titan motor home which became the entire down payment for the Pace Arrow.

The trial court, after determining that the Plymouth and the Pace Arrow were marital assets, divided the marital property into approximately equal portions. The court considered the 28-year marriage, petitioner's role in raising the five children, and her limited ability to acquire income in rendering its decision. "If a property distribution results in substantially equal shares for both parties and it is apparent from the record that the court thoughtfully and carefully applied the rationale of the statute to the facts before it, then the court did not abuse its discretion and the award will not be disturbed on review." (*In re Marriage of Reed* (1981), 100 Ill. App. 3d 873, 875, 427 N.E.2d 282.) Accordingly, we affirm the trial court's distribution of the marital assets. *In re Marriage of Smith* (1982), 105 Ill. App. 3d 980, 983, 434 N.E.2d 1151.

■ Respondent next argues that the trial court erred in awarding petitioner maintenance. The award of maintenance is within the sound discretion of the trial court, and we will not reverse decisions concerning maintenance unless the court has abused its discretion. (*In re Marriage of Holman* (1984), 122 Ill. App. 3d 1001, 1013, 462 N.E.2d 30.) Under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*), the court is encouraged to provide for each party's needs through an equitable property distribution, instead of awarding maintenance. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 318, 453 N.E.2d 866.) "Where the property available to [each] spouse is sufficient to satisfy that spouse's needs and entitlements, the use of maintenance should be limited. *** If there is not sufficient marital property, however, maintenance should be considered." *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 38, 411 N.E.2d 238.

■ The evidence at trial indicated that petitioner's pension benefits will be approximately $50 per month if she retires on her sixtieth birthday, and her benefits under the Railroad Retirement Act will be $368 per month. She has also inherited approximately $90,000, which at 8% annual interest would provide her additional income of $600 per month. She received liquid assets worth about $15,600 in the dis-

tribution of marital property. However, petitioner had already used a substantial portion of her inheritances to meet her living expenses, and it appeared that she would need to spend her liquid marital assets and part of her inheritances prior to her retirement. Thus, the trial court heard evidence from which it could infer that petitioner's income after her retirement, apart from maintenance, will be around $800 to $900 per month, while her expenses will remain near $2,000 per month. We agree with the trial court's conclusion that petitioner will lack sufficient property to provide for her reasonable needs after she retires (Ill. Rev. Stat. 1985, ch. 40, par. 504(a)(1)), and she will not be able to work or in any other way acquire the needed income (Ill. Rev. Stat. 1985, ch. 40, par. 504(a)(2), (a)(3)).

Respondent, by contrast, will continue to receive his pension of $1,250 per month, and he has liquid assets which will provide another $170 per month in interest income. As long as his expenses remain near $1,100 per month, his income will be ample for his needs, and he will be able to help petitioner meet her needs. On the basis of this evidence the trial court awarded petitioner maintenance of $269 per month, to begin the year that she will turn 60. This award should leave respondent with sufficient income to meet his expenses, and it will significantly assist petitioner in her efforts to meet her expenses. Under the circumstances of this case, we find that the trial court did not abuse its discretion in awarding maintenance. If Congress chooses to eliminate respondent's retirement benefits (see *Hisquierdo v. Hisquierdo* (1979), 439 U.S. 572, 575, 59 L. Ed. 2d 1, 7, 99 S. Ct. 802, 805), or if for any other reason respondent is unable to make the maintenance payments, or if petitioner no longer needs the payments, respondent may petition the court to change the maintenance award.

■ Respondent argues that the trial court violated the anti-assignment provisions of the Railroad Retirement Act in awarding petitioner maintenance. The Act provides:

> "[N]o annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated ***." (45 U.S.C.A. §231m. (West 1986).)

Respondent, relying on *Hisquierdo,* contends that the trial court impermissibly assigned part of his annuity when it ordered respondent to pay petitioner "$269.00 monthly for a period of seventy-two (72) months beginning January 1, 1994 (out of his Tier II RRR entitlement)."

The Social Security Act contains an express exception to the Rail-

road Retirement Act's anti-assignability clause which states:

"Notwithstanding any other provision of law ***, moneys *** due from, or payable by, the United States *** to any individual *** shall be subject *** to legal process brought for the enforcement, against such individual of his legal obligations to *** make alimony payments." (42 U.S.C.A. §659(a) (West 1983).)

The payments which the court ordered respondent to make to petitioner clearly fall within the statute's definition of alimony. (42 U.S.C.A. §662(c) (West 1983).) Therefore, the statute entitles petitioner to bring suit for the amounts stated in the maintenance order, despite the provisions of the Railroad Retirement Act.

In *Hisquierdo*, the Supreme Court held that the Railroad Retirement Act barred State courts from dividing railroad retirement benefits as property in marital dissolution cases. (*Hisquierdo*, 439 U.S. at 590, 59 L. Ed. 2d at 16, 99 S. Ct. at 812-13.) However, the Court expressly distinguished alimony from the division of property, and it noted that "Congress amended the Social Security Act by adding a new provision, §459, to the effect that, notwithstanding any contrary law, federal benefits may be reached to satisfy a legal obligation for child support or alimony." (439 U.S. at 576, 59 L. Ed. 2d at 7, 99 S. Ct. at 805-06.) The "amendments *** both permit and encourage garnishment of Railroad Retirement Act benefits for the purposes of spousal support." (439 U.S. at 590, 59 L. Ed. 2d at 16, 99 S. Ct. at 812-13.) The Court held that property division in marriage dissolution is not a form of alimony for purposes of the Social Security Act (439 U.S. at 577, 59 L. Ed. 2d at 8, 99 S. Ct. at 806), and therefore the trial court was barred from dividing the retirement benefits (439 U.S. at 590, 59 L. Ed. 2d at 16, 99 S. Ct. at 812-13). The Court did not hold that the statute barred trial courts from ordering maintenance which could only be paid out of railroad retirement benefits. We hold that the trial court's parenthetical remark, observing that the maintenance would come out of respondent's railroad retirement benefits, is surplus language which does not affect the court's authority to make the maintenance award. We conclude that the award of $269 monthly maintenance, payable to petitioner from 1994 until 2000, was not improper.

■ Respondent further objects to the awards of health insurance and $2,500 in attorney fees to the petitioner. Both parties agreed in open court that respondent would pay $2,500 of petitioner's attorney fees, and respondent never attempted to rescind that agreement in the trial court. We find that respondent has waived this issue for pur-

poses of appeal. *Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 550, 449 N.E.2d 65.

■■ Respondent relies on *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 442 N.E.2d 557, to support his contention that the trial court exceeded its authority when it ordered respondent to obtain health insurance for petitioner. In *Fairchild,* the trial court refused to consider the husband's health and life insurance benefits as marital property for purposes of property division. (110 Ill. App. 3d at 472.) The appellate court affirmed, holding that the benefits were not property within the meaning of section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503). (*Fairchild,* 110 Ill. App. 3d at 472.) In the case at bar, the trial court did not attempt to evaluate the insurance as property. When petitioner convinced the court that she was unable to obtain adequate health insurance for herself, and respondent admitted that he could obtain coverage for her under his policy, the trial court ordered him to obtain that insurance. We hold that the order was a legitimate exercise of the court's power to award maintenance under section 504 of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1985, ch. 40, par. 504(b).

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and FREEMAN, JJ., concur.