(No. 54284.—

*In re* MARRIAGE of IONA SMITH, Appellee, and GAINES N. SMITH, Appellant.

*Opinion filed October 21, 1981.*

Sam S. Pessin, of Pessin, Baird & Wells, of Belleville, for appellant.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Iona Smith, and defendant, Gaines N. Smith, ended their 22-year marriage with a 1978 decree of dissolution entered in the St. Clair County circuit court, followed by a property division order several months later. A post-trial motion by plaintiff resulted in a further hearing and an amended order which plaintiff appealed, urging error in the assignment and division of property and denial of her request for maintenance and attorney fees. The appellate court affirmed in part, reversed in part, and remanded for further fact finding on several questions. (90 Ill. App. 3d 168.) We allowed defendant's petition for leave to appeal.

As of the date of dissolution the parties owned, individually or jointly, four parcels of real property, various stocks and bank accounts, two retirement plans, a corporation, and a pickup truck, all in issue here. The appellate court opinion gives a detailed description of the properties. For our purpose a brief description of each will suffice.

The marital home was purchased in joint tenancy in 1959, after the marriage. Its current value was placed at about $48,000 by the defendant and about $70,000 by the plaintiff. The trial court found a value of $41,420 to be

marital property, and, dividing it equally, ordered defendant to pay plaintiff $20,710 for her equity. Although the computations are not in the record, the trial court might have reached this $41,420 figure by deducting the percentage of nonmarital property that defendant traced into the purchase price of the home from its value at the date of dissolution. The appellate court affirmed the order to plaintiff to convey her interest to defendant but remanded to the trial court to reconsider and establish the value of the home according to the evidence introduced at trial.

A 200-acre tract of farmland in Washington County was acquired by the parties in 1965 and is held in joint tenancy. Defendant traced funds which were originally nonmarital into the down payment and a portion of the mortgage payments. The trial court ordered the property sold and gave to defendant a portion of the sales price proportionate to his contribution of nonmarital assets, the remainder to be divided equally as marital property. The appellate court reversed the order insofar as it gave defendant more than a straight refund of his nonmarital contribution and affirmed the remainder as marital property.

Defendant owns in his name a property which housed his office and two apartments which he rented out. The property was acquired in settlement of his mother's estate in 1966, and was valued at $45,000 at the time of dissolution; no figures were in evidence as to the value in 1966. Improvements totaling $3,800 were made to the property with marital funds. The trial court found the property itself to be nonmarital and assigned it to defendant, and found the improvements to be marital, equally dividing the value. The appellate court affirmed.

Another residential property is owned in the name of a son (by a previous marriage) of the plaintiff in Indianapolis, Indiana, in which she resided after separation. The down payment of $4,000, plus another $4,000 in improvements, was made with her nonmarital funds, as were rental pay-

ments to her son which approximated the monthly mortgage payment. The home was purchased in 1978 for $18,500 and was worth about $35,000 at the date of dissolution. The trial court awarded plaintiff $6,000 as her nonmarital share and divided the net equity (value less remaining mortgage) equally as marital property. The appellate court reversed because the record owner was not a party to the proceedings and because the property was purchased with nonmarital funds.

The parties also own various stocks. Among them are 2,220 shares of Ralston Purina—2,100 in the name of defendant and 120 held jointly. Defendant testified that all 2,220 are a result of stock splits or stock dividends accruing to an original 38 shares which he owned since before marriage. Business records of Ralston Purina introduced by plaintiff at trial do not clearly show whether shares accumulated after marriage were the result of stock splits or stock dividends. Plaintiff claimed she bought the 120 shares with nonmarital funds. The trial court assigned to defendant 2,000 shares as nonmarital property and divided 120 shares equally as marital property. (One hundred shares were apparently a gift to the son and were not included in the trial court order.) The appellate court reversed and remanded for further inquiry into the acquisition of the stocks, holding that stock dividends would be considered marital property even though the principal stock was nonmarital.

Plaintiff also owns, in her name individually, 25 shares of Bank of Belleville stock. Another 12 shares are owned by defendant individually. Defendant claims all stock was purchased as exchange for nonmarital property (some Ralston Purina stock), while plaintiff claims she bought her 25 shares with nonmarital funds. The trial court awarded defendant his 12 shares as nonmarital property and found the other 25 shares to be marital property and divided them equally. The appellate court reversed and remanded, find-

ing that 10 of the 25 shares were a gift to the plaintiff and that 10 of the 12 were defendant's nonmarital property, but that further inquiry was necessary to determine whether the additional shares were due to stock splits or stock dividends.

The plaintiff alleges error in the failure of the trial court to divide proceeds from the sale of stocks which defendant testified he sold after separation. The appellate court disagreed because there was nothing in the record to indicate that the proceeds were used for other than marital purposes.

The disposition of various savings accounts from which defendant withdrew large sums after the separation is also disputed by the plaintiff. The trial court divided equally the balance as of the date of dissolution. The appellate court affirmed because there was adequate evidence that the funds were used to pay legitimate debts incurred during the marriage.

The trial court also divided equally the amounts, found to be marital property, in defendant's Keogh plan and plaintiff's IRA account. Plaintiff claims her account was not put into evidence; however, the appellate court affirmed, finding that the record did mention this account.

Plaintiff contests the trial court's decision that a pickup truck, bought with marital funds, had been given as a gift to plaintiff's and defendant's son. The appellate court affirmed.

Defendant is the sole shareholder of Gaines Financial Corporation, which owned, as its sole asset, a $6,000 savings account. The evidence indicates that this $6,000 was made up of a $4,500 loan against an insurance policy of defendant, a $1,000 gift from his sister, and $500 of marital funds. The trial court found that $500 of the $6,000 was marital property, dividing it equally. The appellate court reversed and remanded for a redetermination of value.

Finally, plaintiff argues that she should be awarded maintenance and attorney fees which the trial court denied. The appellate court remanded for reconsideration based on

its alteration of the property division.

Most of the contentions here center on the construction and application of section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503). That section in its pertinent parts provides:

"Disposition of property

(a) For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

(1) property acquired by gift, bequest, devise or descent;

(2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent;

(3) property acquired by a spouse after a judgment of legal separation;

(4) property excluded by valid agreement of the parties;

(5) the increase in value of property acquired before the marriage; and

(6) property acquired before the marriage.

(b) All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section.

(c) In a proceeding for dissolution of marriage or declaration of invalidity of marriage, or in a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's

non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;
* * *."

Under section 503(c) of the Act the trial court must classify all property owned by the parties, whether title is held individually or in some form of co-ownership, as either marital or nonmarital. Section 503(a) contains an exclusive list of nonmarital property. Once classified, the nonmarital property of each spouse is assigned to that spouse and the marital property is equitably divided between them. To aid the court in making this equitable division section 503(c) lists 10 relevant factors for consideration.

Two questions involving assignment and division of property are before us. The first is whether nonmarital property, title to which is originally held in the name of one spouse, becomes marital property if that spouse tranfers title to joint ownership. The second is whether property held in the name of only one spouse and consisting of commingled nonmarital and marital property is marital property.

The first question has been answered by us since appeal was taken in this case. In *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 223, we held that a marital home owned in joint tenancy is presumed "in fact" as marital property "even if one spouse has furnished all of the consideration for it out of nonmarital funds." In *In re Marriage of Emken* (1981), 86 Ill. 2d 164, decided this term, we extended *Rogers* to a joint bank account. We extend it here to stock certificates held in the name of both spouses.

We answer the second question similarly: where a spouse who holds nonmarital property causes it to be commingled with marital property, or with nonmarital property of the other, we hold that the commingled property is presumed to be marital property. We reach this result on the basis of principles announced in *Rogers* and *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, and the legislative preference, expressed in section 503, for the classification of property as marital.

In *Komnick* we rejected the argument that property may have dual characteristics—that is, partly marital and partly nonmarital. (See also *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 99.) In both *Rogers* and *Emken* we affirmed this principle in rejecting arguments that nonmarital contributions to property held in joint tenancy should be assigned as nonmarital property. In both cases, despite the contribution, the entire property was held to be marital. We also note that the use of the definite article "the" in the last sentence of section 503(b) ("*** that the property ***") implies a unitary concept of property.

The theory of marriage advanced by the General Assembly, as expressed in section 503, is one of equal partnership. (See *In re Marriage of Rogers* (1981), 85 Ill. 2d 217; *In re Marriage of Komnick* (1981), 84 Ill. 2d 89; *Auerbach, An Introduction to the New Illinois Marriage and Dissolution of Marriage Act*, 66 Ill. B.J. 132, 136-37 (1977).) In part, section 503 was intended to recognize and compensate the homemaker as an equal partner to the marriage—a partner whose domestic contributions have assisted in giving economic value to the tangible assets of the marriage. (See Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(1); Ill. Ann. Stat., ch. 40, par. 503, Historical and Practice Notes, at 470 (Smith-Hurd 1980).) The legislative preference for the classification of property as marital is clear from the interplay of sections 503(a) and (b) as well as the provisions of section 503(c)(1).

Although we believe that the intent of section 503 as a

whole was designed to eliminate disparity between the marriage partners, the section 503(a) exceptions (1) through (6) manifest the legislative purpose to preserve the character of nonmarital property in those situations where the actions of the parties have not created ambiguity. An early draft of the uniform act created a "hotchpot of assets" to be apportioned by a court upon dissolution without regard to the method or time of acquisition. (Uniform Marriage and Divorce Act section 307 (alternative A), 9A Unif. Laws Ann. 142-43 (1979).) Illinois, preferring to distinguish between separate property and marital property, enacted an amended version of the uniform act, excepting from marital property the specific list in section 503(a). This section permits a spouse who has acquired property before the marriage or even after the marriage, if acquired by what has been characterized as "lucrative" rather than "onerous" means (see generally Krauskopf, *Marital Property at Marriage Dissolution*, 43 Mo. L. Rev. 157, 178-79 (1978); Heyman, *The Illinois Marriage and Dissolution of Marriage Act: New Solutions to Old Problems* 12 J. Mar. J. Prac. & Proc. 1, 10 (1978)), to hold this property, separate from the marriage partnership, as non-marital.

Spouse may also, under section 503(a)(2), exchange this property, even after marriage, for other property which, too, will be considered nonmarital. Clearly, if after the exchange the property is segregated from the marital assets and held in the acquiring spouse's name alone, section 503(a)(2) demands that the property be classified as nonmarital. Where, however, the spouse has failed to segregate the property during the marriage, we conclude that the commingled property has not been acquired by a method described in section 503(a).

In order to overcome the presumption of section 503(b), one must prove that "*the* property was acquired by a method listed in subsection (a)." (Emphasis added.) The legislature's use of the definite article "the" when referring

to such property indicates the "unitary" concept of property mentioned earlier. Thus in order to preserve its nonmarital status one must prove that the entire property was acquired exclusively by one of the methods listed in section 503(a), and that its character was not subsequently altered by action of the owner. This interpretation of the effect of section 503(b) upon section 503(a) is consistent with the Act's expressed preference for the classification of property as marital and the shifting of the burden of proof discussed above.

Furthermore, section 503(c)(1) also indicates that preference be given to classifying property as marital. Under this section any contribution made to either marital or nonmarital property may be considered in the division of *marital* property. Therefore, even where the contribution of one partner is insignificant, the possibility of the ultimate property division being inequitable is far less where commingled property is presumed marital rather than nonmarital, since the pool of marital property available for division is greater. Nonmarital property, of course, may still retain its character, despite a contribution of marital funds. We have simply interpreted section 503 as establishing a rebuttable presumption that the contribution is intended to change the character of the property to marital. That result, however, requires affirmative action by the parties—it cannot, as we recently recognized in *In re Marriage of Komnick* (1981), 84 Ill. 2d 89, and *Bentley v. Bentley* (1981), 84 Ill. 2d 97, occur as the result of economic appreciation alone.

We accordingly hold that the preference indicated by the legislature for the classification of property as marital can best be served by presuming that the contributors of marital property to nonmarital property intended that the commingled property be treated as marital. In other words, the failure of a nonmarital property holder to segregate that property will give rise to the rebuttable presumption that the nonmarital property has been transmuted, regardless of

the status of title. Just as the affirmative act of transferring title will support a presumption of gift, so, too, will the affirmative act of augmenting nonmarital property by commingling it with marital property. See *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395; Kalcheim, *Intention Controls: The Theory of Transmutation—The Effect of Placing Property Which Was Initially Non-Marital Into Joint Tenancy; The Theory of Commingling—The Effect of Intermingling Marital and Non-Marital Funds*, 68 Ill. B.J. 320 (1980); accord *Daniels v. Daniels* (Mo. App. 1977), 557 S.W.2d 702, and *Jaeger v. Jaeger* (Mo. App. 1977), 542 S.W.2d 207; see also *Brunson v. Brunson* (Ky. App. 1978), 569 S.W.2d 173, and *In re Marriage of Altman* (1974), 35 Colo. App. 183, 530 P.2d 1012 (which suggest similar results in these jurisdictions).

We now turn to the assignment and division of the particular properties.

Marital home: We affirm the holdings of the appellate and trial courts that the marital home was marital property, noting that although defendant could trace some nonmarital funds to the purchase of the home, the home was purchased after the marriage, title was held in joint tenancy, and marital funds were used to pay mortgage payments. No evidence was offered to rebut the presumption of gift to the marriage. We also affirm the appellate court's remand for reconsideration of the proof on the issue of valuation.

Washington County farmland: Although title to the farmland was in joint tenancy, both the appellate court and the trial court classified it as both marital and nonmarital. We reverse and remand for proper classification, and division or assignment. We note that if the farm is found to be marital property, the contribution of Gaines Smith's nonmarital property to the purchase price can be considered in the later division of marital assets under section 503(c). The trial court may, on remand, also entertain a motion by plaintiff to amend the complaint to provide for

relief by partition. Since plaintiff will have this opportunity we need not decide here whether the trial court under the Act has inherent power to partition. See *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835.

Office/Rental property: Where nonmarital property is improved by the addition of marital property, such improved property is presumed to be marital property. The presumption arises here because of the contribution of marital funds to renovate the property. Accordingly, the trial court, on remand, will consider the evidence in light of this opinion.

Ralston Purina stock: We reverse the appellate court holding that post-marriage stock dividends are marital property irrespective of the character of the principal stock. For purposes of classification of property under this act we hold that both stock splits and stock dividends shall be treated as is economic appreciation under *Komnick*. Neither a stock split nor a stock dividend increases the shareholder's ownership rights in a corporation. (*Dekoven v. Alsop* (1903), 205 Ill. 309 (for purposes of allocating income between life tenant and remaindermen); see generally *McDonald v. Maxwell* (1927), 274 U.S. 91, 71 L. Ed. 942, 47 S. Ct. 497; *Eisner v. Macomber* (1920), 252 U.S. 189, 64 L. Ed. 521, 40 S. Ct. 189; 19 Am. Jur. 2d *Corporations* § 812 (1965).) We remand on this issue for the trial court's reconsideration of the entire Ralston Purina stock question in light of this opinion.

Gaines Financial Corporation and Bank of Belleville stock: These questions, too, are remanded for further consideration.

Indianapolis property: This issue is also remanded for further consideration, including whether the record title-holder is a necessary party to this action.

We affirm the appellate court rulings as to the sale of the Marion Lab, and I.D.S. stocks prior to dissolution, the savings accounts, the retirement accounts, and the pickup

truck. On the issue of maintenance and attorney fees, we affirm the appellate court and remand for further consideration.

*Judgments affirmed in part
and reversed in part;
cause remanded, with
directions.*