*In re* MARRIAGE OF WILLIAM M. VOIGHT, Petitioner and Counterrespondent-Appellee, and IRENE A. VOIGHT, Respondent and Counterpetitioner-Appellant.

First District (2nd Division)   No. 81—3023

Opinion filed December 28, 1982.

Arvey, Hodes, Costello & Burman, of Chicago, for appellant.

Stanley F. Kaplan, P.C., of Chicago, for appellee.

JUSTICE DOWNING delivered the opinion of the court:

William M. Voight (William) petitioned for dissolution of his marriage to Irene A. Voight (Irene), who counterpetitioned for the same relief. Dissolution, without cause or provocation, was granted in favor of Irene. Irene filed a post-trial motion contesting the court's property distribution order. Irene appeals the court's denial of her request for partition of the couple's residence and the order requiring Irene to convey by quitclaim deed to William her interest in a house on Pulaski Avenue.

William and Irene, who met through their employment as police officers for the Chicago police department, were married December 10, 1977. Although the parties disagree about the manner in which the events of their lives together came about, there is no dispute that the couple met in July of 1976 and began to see each other socially some time in July of 1977. Both were 29 years old at the beginning of these proceedings and both had previously been married once. The harmony ends here.

A petition for dissolution was filed by William on October 30, 1979. Irene counterpetitioned. Following a hearing on Irene's counterpetition, dissolution in her favor was granted. After hearings were held, the circuit court ordered the following: (1) the dissolution of the couple's marriage; (2) that Irene execute a quitclaim deed transferring sole title of the property on Pulaski Avenue to William; (3) the sale of the couple's Wisconsin property and division of the proceeds, 60% to William and 40% to Irene; (4) that William execute any documents necessary to transfer sole title and interest in a 1977 station wagon to Irene; and (5) that William pay Irene $3,500 in consideration of her interest in the home improvements on Pulaski Avenue and for appliances purchased during the marriage. Each was barred from any interest of the other as to maintenance, attorney fees and a pending personal suit of Irene's.

The testimony in the property distribution hearings focused on each party's contribution toward the marital assets and joint funds. Both parties were of equal rank on the police force and earned approximately the same amount of money. William earned slightly more as a result of seniority.

Irene stated that beginning in July of 1977, she contributed portions (ranging from 50% to all) of her paycheck to a joint fund with William in anticipation of their marriage. She was married to her first husband at the time, but expected an early dissolution of that marriage. A joint checking account was opened in January 1978.

William disagreed with Irene regarding the date the account was opened and the amounts and frequency of her contribution. According to William, she contributed six of her checks from the police department to their joint checking account. William attempted to substantiate his claim by offering into evidence Irene's cancelled paychecks during the time of their marriage, showing that all but six (bearing the joint account number) were cashed at currency exchanges and other banks. Irene said that she stopped contributing to their joint fund in June 1979 when the relationship with William broke down and she moved out.

There is little dispute about the use of the joint funds, which included the following: mortgage payments on the Pulaski property; partial payment for two autos; partial payment for Wisconsin property; improvements and appliances at the Pulaski property; expenses of a dog-grooming business run by Irene; taxes and insurance on the Pulaski property; and normal household expenses.

Although Irene testified that she began to contribute to a joint fund[1] with William in July of 1977, there is no dispute that in October 1977, William provided the down payment for the house on Pulaski Avenue. That down payment was $7,500. William testified that, as he was tired of apartment living, he purchased the house as an investment. Irene's explanation of her understanding of why William purchased the house was that he purchased the house in anticipation of their pending marriage; however, in her testimony, she agreed that he bought the house as an investment.

William stated that he moved into the house in October of 1977 and that Irene moved in around November 20, 1977. Irene said that the two moved on the same day. On August 16, 1978, the title of the property was changed from William to William and Irene as joint tenants. Irene testified that the transfer occurred in January or February of 1978. William testified that he was pressured into making this transfer by Irene and that the couple had agreed that if he placed the property in joint tenancy, she would have a will drafted granting to him her interests in other property from her first marriage. This was

---

[1]The record is not clear as to whether a "joint fund" is the same as a "joint checking account."

never done. Six months after title was placed in joint tenancy, Irene moved out.

The parties also disagreed about Irene's contribution to the remodeling of the house and her efforts in cleaning the house, which William claims was a source of continued turmoil and embarrassment. Irene said that she assisted in the house improvements by constant cleaning in addition to normal domestic chores.

The couple purchased property in Wisconsin after they were married. The price of the property was $5,000, of which $3,000 was from a loan secured by an account of William's with the police credit union, the balance coming from the couple's joint funds. At the time the petition was filed, $2,200 was still owing on this property. The monthly payment on the loan ($95) came from the joint fund.

Additionally, the couple jointly held title to a 1977 station wagon, purchased with $500 from the joint account and $3,500 from the sale of an auto Irene received as part of the settlement of her first divorce. There was a balance due on the old auto when Irene received it, which was subsequently paid for from joint funds. Title to the 1977 auto was originally taken in Irene's name. There is conflicting testimony regarding Irene's knowledge and consent to the transfer of the title from Indiana to Illinois and to joint ownership. Irene denied any knowledge of the transfer or that the signature on the title transfer was hers.

I

Initially, we consider Irene's argument that if the house on Pulaski Avenue is nonmarital property, the court erred by ordering her to transfer her joint interest to William and in denying her petition for partition of the jointly held property. We agree.

Under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(c), redesignated former section (c) as section (d) by Pub. Act 82—668, sec. 1, eff. Jan. 1, 1982), the trial court must classify all property owned by the parties, regardless of how title is held, as either marital or nonmarital. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239.) Section 503(a) contains an exclusive list of nonmarital property. Once classified, the nonmarital property of each spouse is assigned to that spouse and the marital property is equitably divided between them. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 528.) Therefore, when property is found to be nonmarital and held in joint tenancy, the parties' joint interest should not be affected by the dissolution and property distribution order. *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174,

181, 429 N.E.2d 465, *cert. denied*, 456 U.S. 905, 72 L. Ed. 2d 162, 102 S. Ct. 1751.

Here, the trial court erred in ordering Irene to transfer her joint interest in the nonmarital property on Pulaski Avenue. Where the property is nonmarital, the trial court has no general discretion to alter the fixed, separate interests of the parties as it has in the case of marital property held in co-ownership. The order requiring Irene to transfer her joint interest in the property on Pulaski Avenue is reversed and the cause remanded. Upon remand, the trial court must consider an equitable property distribution in light of this order. Additionally, it should be noted that the trial court may, upon remand, entertain Irene's petition for partition. (Ill. Rev. Stat. 1981, ch. 40, par. 514.) Although the right to partition has been changed by the legislature as it relates to marital property, the right to partition of nonmarital property interests continues to be an appropriate action under this Act. (Ill. Ann. Stat., ch. 40, par. 514, Historical and Practice Notes, at 797 (Smith-Hurd 1980).) The trial court should strive to reach a high degree of finality "so that parties can plan their future with certainty and are not encouraged to return repeatedly to the courts." *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 459, 426 N.E.2d 1087.

## II

■ Irene argues that the court erred by finding the residence on Pulaski Avenue to be nonmarital property. We disagree.

While it is true that the affirmative act of transferring title to some form of co-ownership during the marriage will support a presumption of gift to the marriage, this presumption is rebuttable. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 531-32.) The party attempting to rebut the presumption of a gift to the marriage must show that the property was never intended to be a gift to the marriage. (*In re Marriage of Uluhogian* (1980), 86 Ill. App. 3d 654, 657, 408 N.E.2d 107.) Here, the trial court incorrectly stated in its judgment that no presumption of gift or transmutation exists and found the property on Pulaski Avenue to be nonmarital property. Although the trial court's statement of the law was erroneous, its conclusion that the property on Pulaski Avenue is nonmarital is supported by the evidence in the record. "If the decision of a court is correct under the circumstances of the case, it will not be reversed on appeal for the reason that an incorrect means was used to arrive at the decision ***; and this is particularly true where reversal and retrial would only result in the same decision." (*In re Estate of La Rue* (1964), 53 Ill.

App. 2d 467, 475, 203 N.E.2d 47.) Here, the evidence reveals that William had purchased the house on Pulaski Avenue as an investment prior to his decision to marry Irene and he transferred title into joint ownership to end Irene's badgering and in reliance upon Irene's promise to name him as a beneficiary in her will. Additionally, the down payment was furnished by William as well as a majority of the funds used for the mortgage payments. From our review of the record as a whole we find nothing which would require reversal of the trial court's finding that the property on Pulaski Avenue was nonmarital. *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 559, 356 N.E.2d 779.

### III

■ Finally, Irene contends that the trial court's failure to make specific findings of fact as to the value of the principal marital assets was erroneous. We cannot agree.

The trial court need not make specific findings of fact as to the value of the marital assets so long as the evidence of value in the record is sufficient to enable a court of review to analyze the property distribution. *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 565, 425 N.E.2d 1146.

Here the record contains the testimony of the parties regarding the value of the marital assets which included the following: five appraisals ($49,500-$72,000) of the house on Pulaski; the purchase price of the Wisconsin property was $5,000, with a loan balance of $2,200 at the time of the hearings; the 1977 Mercury was purchased with $500 from the joint funds and the sale of a car Irene received from her first marriage to meet the balance of the $4,000 purchase price; and the improvements of the house on Pulaski were valued at between $12,000 and $15,000. There was ample evidence in the record for the court to make its determination and for a court of review to analyze that determination. We find no abuse of discretion.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed, except as to that portion of the judgment directing Irene Voight to execute a quitclaim deed transferring sole title in the property on Pulaski Avenue to William M. Voight which is hereby reversed and the cause is remanded for such action as is consistent with the views expressed herein.

Affirmed in part; reversed and remanded in part.

PERLIN and HARTMAN, JJ., concur.