*In re* MARRIAGE OF JACKIE CULLMAN, Petitioner-Appellant and Cross-Appellee, and PHILIP CULLMAN, Respondent-Appellee and Cross-Appellant.

First District (4th Division)   No. 1—88—2170

Opinion filed June 29, 1989.

1030

Mary Ellen Dienes, of Chicago, for appellant.

Greenberg, Keele, Lunn & Aronberg, of Chicago (Nathan H. Lichtenstein and Ellen K. Lawson, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Jackie Cullman appeals from portions of the trial court's judgment in the dissolution of her marriage to Philip. Specifically, she challenges the court's determination that the marital residence was Philip's separate, nonmarital property. She further contends that the trial court erroneously limited her recovery of attorney fees by misinterpreting the parties' prenuptial agreement. Philip cross-appeals from the partial award of attorney fees to Jackie and also from the order denying his motion for fees under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611).

We reverse in part, affirm in part, and remand.

BACKGROUND

On October 3, 1979, three days before their marriage, Jackie and Philip executed a prenuptial agreement. Philip's assets included shares of common stock valued at over one-half million dollars, repre-

senting his interest in his family-owned business, Cullman Wheel. He also owned a home in Deerfield, Illinois, valued at $145,000. His total assets were listed as $778,625 and his net as $687,625. Jackie's assets, including equity in a condominium, totalled $43,000.

The prenuptial agreement specifies that each party's listed assets were to be considered as his or her nonmarital property. Further, the agreement stated that property acquired "in exchange for" nonmarital property or "acquired with the proceeds from the sale of" nonmarital property "and the increase in value of" nonmarital property would retain its nonmarital treatment.

The prenuptial agreement further provided that, if the parties divorced within five years, Jackie would receive $10,000, paid in three equal annual installments, in lieu of any marital rights to maintenance or support. After five years of marriage, but before 10, the sum would increase to $25,000, payable in equal annual installments over five years. After the tenth year of marriage, the agreement would terminate.

At the time the divorce proceedings began the parties had been married for over five years. Jackie filed, on grounds of physical cruelty, and Philip did not contest the action. Jackie did not dispute the validity or general interpretation of the prenuptial agreement. However, she claimed that the house in which the couple were living, placed in joint tenancy, was marital property. The trial court agreed with Philip, however, that the house was his nonmarital property and awarded it to him.

The evidence reveals that when the parties were married in 1979, Philip owned as his nonmarital property the Deerfield house. In 1981 he sold it and put $75,000 of the sales proceeds towards the purchase of the house in Kildeer. Title was taken in the names of Jackie and Philip, in joint tenancy. To obtain the $110,000 balance of the purchase price, the parties acquired a mortgage loan. Both signed the mortgage documents, which included the sale contract, mortgage, note, warranty deed, and bill of sale. The title insurance policy showed both parties as owners.

Jackie testified that she believed that she was an owner of the Kildeer home when they purchased it in May 1981. She did not furnish any of the purchase money but she did pay the fee for the mortgage papers. Philip did not tell her when they purchased the property that he did not intend for her to acquire an interest in the Kildeer home. Nor did he ever tell her that he did not consider her an owner.

Philip testified that he did not intend for her to become a co-

owner of the property. He admitted that no one forced him to place title in joint tenancy. He said that there was no particular reason why Jackie's name was included on the real estate contract.

Philip also testified, over objection, regarding a telephone conversation he allegedly had with his attorney on May 8 or 9, 1981, regarding the effect that the prenuptial agreement might have on the purchase of the Kildeer home. The attorney did not testify.

Philip paid all of the mortgage payments, except for one $1,400 installment that Jackie had supplied. He also paid the taxes, insurance and utilities. Jackie purchased all of the food, household cleaning needs, and linens. She landscaped the property, spending her own money on gardening expenses. She also paid for some house repairs, including electrical work, air-conditioning, and waterproofing the basement. Both parties contributed approximately equal amounts toward purchasing the furnishings. Jackie painted some of the interior rooms of the house.

Jackie and Philip each maintained separate bank accounts. They did not deposit into or withdraw from each other's accounts, nor did they open joint bank accounts. Jackie paid for the parties' vacations. She bought her own clothes and paid her own medical bills.

In its order distributing the property the court ruled that the Kildeer residence was Philip's sole, nonmarital property.

After an evidentiary hearing on Jackie's request for attorney fees the court determined that the prenuptial agreement provided for each side to bear his own fees and costs. The court did allow Jackie's fees on the issue of whether the Kildeer property was marital or nonmarital property, however.

PHILIP'S CROSS-APPEAL

Philip had filed a motion for sanctions under section 2—611 of the Code of Civil Procedure after Jackie requested the court to award her temporary maintenance. The basis for his motion was that the general waiver clause in the prenuptial clause included temporary maintenance and that, since Jackie clearly had waived maintenance, she should be sanctioned. Additional facts concerning the cross-appeal will be given as part of our analysis of the issues Philip raises.

OPINION

I

■ When a spouse transfers property acquired before marriage into joint tenancy during the marriage, he or she is presumed to

have made a gift to the marital estate. (*In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 257, 483 N.E.2d 316, 320; *In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 416 N.E.2d 1235.) The donor spouse may rebut the presumption of gift only with clear, convincing, and unmistakable evidence. *In re Marriage of Wingader* (1981), 95 Ill. App. 3d 9, 419 N.E.2d 611; *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028.

■ In the pending case, Philip presumptively transmuted the nonmarital proceeds from the Deerfield home into marital property when he put the Kildeer house in joint tenancy. The Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*) reveals a legislative preference for classifying property as marital. (*In re Marriage of Smith* (1981), 86 Ill. 2d 518, 529, 427 N.E.2d 1239, 1244.) The resulting presumption should not be lightly overcome by judicial decision where the facts do not warrant it. (See *Comstock v. Comstock* (1977), 55 Ill. App. 3d 140, 370 N.E.2d 645.) The Illinois Supreme Court in *Smith* explained the legislative theory of marriage as being one of equal partnership with a "unitary concept" of property. The court further noted that the Act allows parties to preserve the nonmarital character of property, as long as the parties' actions have not created *ambiguity* in that regard. *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 530, 427 N.E.2d 1239, 1245.

Our review of this record reveals that, at the least, Philip's actions created ambiguity concerning the ownership of the Kildeer house. Philip had carefully planned for the preservation of his nonmarital property, as evidenced by the prenuptial agreement and the segregation of bank accounts. He had some experience with the purchase and titling of real estate, as evidenced by his separate ownership of the Deerfield house. Then, after several years of marriage Philip sold the Deerfield house and used a portion of the proceeds as a down payment on the Kildeer home. When he did so he allowed title to be placed in both his and Jackie's names. Jackie obligated herself on the mortgage papers as a co-owner. Philip did not request title to be put in his name, nor did he put the property in a land trust with himself as sole beneficiary. There is no evidence that he objected to the joint tenancy arrangement. Hence we find little competent evidence of record to rebut the legal presumption that the placement of the home in joint tenancy transmuted it into marital property.

Philip admitted that there was "no particular reason" why Jackie was made co-owner on the deed and mortgage papers. Jackie testi-

fied that she thought she was a co-owner and that she was not told otherwise. She also paid part of the closing fees on the property and one $1,400 mortgage installment. Philip did not treat these payments as a loan to him.

These payments, while small in relation to the mortgage, tax, and insurance payments Philip made, are nevertheless probative on the issue of donative intent. Certainly, Jackie was legally bound on the mortgage papers to repay the loan, something that she might not have agreed to if she believed that Philip did not intend to allow her to acquire an ownership interest in the house. Even if neither party gave much thought to the form of the transaction, the legal presumption that marital property was created remains in effect.

In those cases in which a donor spouse has been found to have successfully rebutted the presumption of gift, more evidence than his own statement of intent has been required. For example, in *In re Marriage of Rink* (1985), 136 Ill. App. 3d 257, 483 N.E.2d 316, the evidence established that the blind husband's bank accounts were put in joint tenancy simply to facilitate banking transactions and that he had maintained a similar arrangement with his mother before he married. In the case of *In re Marriage of Guerra* (1987), 153 Ill. App. 3d 550, 505 N.E.2d 748, the court found that certain property put in joint tenancy was actually the nonmarital property of the husband. Both parties controlled separate bank accounts and did not use each others', despite the fact that both names appeared on all of the accounts. The husband used one of his accounts as a conduit for the sales proceeds from his nonmarital stock, never intending to make it a gift to the marriage. Several loans that the wife had made to the husband's company had been repaid, with interest. Both parties had previously married, the husband three times before. The marital residence was titled in a land trust and the wife was not made a trust beneficiary, nor did she sign any mortgage papers or pay any part of the purchase price or expenses of maintaining the house.

■ In the pending case, the only evidence Philip offers to rebut the presumption is his testimonial reference to a conversation with his attorney concerning the effect of the prenuptial agreement on the purchase of the Kildeer home. The evidence appears to be inadmissible hearsay if offered to prove the truth of the matter asserted. Even assuming the testimony was properly admitted under a hearsay exception, it is vague and inconclusive. If the attorney assured Philip that the property would remain nonmarital—and the testimony does not go so far—there remains a question as to Philip's reasonable reliance on this opinion and the effect of his secret belief on the owner-

ship of the house. Since the attorney did not testify, and since Philip's interest is obvious, we believe that this testimony is entitled to little weight.

■ Philip additionally argues that the presumption of gift is negated by the fact the parties kept separate bank accounts. We find, however, that the careful segregation of all *other* property just as easily supports the inference that the Kildeer home was deliberately put in joint tenancy to give Jackie a marital interest in it.

■ We conclude that the trial court's classification of the Kildeer home as Philip's nonmarital property is erroneous. In its ruling, the court noted that the Kildeer property was placed in joint tenancy for "reasons other" than creating marital property. The court did not list these reasons, however, nor has Philip given any. None exist in the record. We cannot merely assume that he had other reasons or speculate on what they may be. Therefore, we hold that Philip failed to present the clear and convincing evidence necessary to rebut the legal presumption that he created marital property in placing the Kildeer home in joint tenancy.

Because of our holding, we need not discuss at length Jackie's "sweat equity" in the home. Under section 503(d)(1), of the Act, the trial court must consider various factors in awarding marital property to the parties, including the contribution of a spouse as a homemaker or to the "family unit." (Ill. Rev. Stat. 1985, ch. 40, par. 503(d)(1).) A spouse who has no income and contributes no money to a marital residence is nonetheless entitled to consideration of her homemaking contributions under this section. Jackie helped to increase or at least maintain the value of the home by landscaping the property, painting the interior, and seeing to needed repairs and cleaning.[1] These considerations are relevant to the division of marital property under section 503; however, in this case the prenuptial agreement provides that all marital property is to be divided equally. Accordingly, on remand the trial court shall award Jackie her 50% interest in the house as marital property.

---

[1] Jackie's financial contribution to the marriage should not be totally disregarded simply because she spent her income on the parties' food, vacations, cleaning supplies and the like instead of real estate taxes and mortgage installments. Her payment of living expenses not directly related to the real estate enabled Philip to apply his money directly to the retirement of the mortgage loan. See *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499 (wife's earnings and labors accounted at least in some part for husband's ability to make the purchase payments on a farm).

## II

■■ Jackie also appears from the trial court's ruling regarding her request for attorney fees. While conceding that the award of such fees is discretionary in any event, Jackie maintains that the trial court erroneously concluded that her claim for fees was expressly prohibited by the prenuptial agreement. Paragraph 1 of the agreement, the general waiver clause, provides:

> "Each party hereby waives, releases and relinquishes any and all claims, interests and rights, of every kind, nature and description, including, but not limited to any right to dower, curtesy, surviving spouse's award, statutory fee, distribution, intestacy, homestead, right to renounce the Will of the deceased spouse, alimony, maintenance and property settlement, which he or she may acquire by reason of marriage in the other party's property, owned by him or her at the time of the marriage or at any time thereafter except as otherwise provided for in Paragraphs 2 through 8 hereof."

Under section 508(a) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)), the trial court may award attorney fees after considering certain factors. In the pending case the court did determine that Jackie was entitled to some fees, for the time spent litigating the classification of the Kildeer property. Regarding the balance of her claim, however, the court construed the waiver provision of the prenuptial agreement as barring Jackie's claim for attorney fees.

We first consider whether this paragraph of the prenuptial agreement operates as a total bar to Jackie's claim for attorney fees, as Philip asserts in his cross-appeal.

Paragraph 1 does not expressly mention attorney fees. The broad language of the provision is clearly intended to bar recovery of all rights and claims that arise directly out of the marital relation. Paragraph 1 lists the common law and statutory rights accorded spouses in the other spouse's *property* "which he or she may acquire *by reason of marriage.*" If attorney fees are considered claims in Philip's property that Jackie may acquire by reason of marriage, she would be barred from recovering them by her contractual agreement and it would appear that even the partial award of fees for the Kildeer litigation would be barred.

■■ ■ We do not agree with Philip, however, that such an interpretation is proper. A waiver of claims, particularly ones involving significant rights granted by law, must be strictly limited to the claims that are expressly enumerated, or which follow so closely as to be deemed of like kind under the principle of *ejusdem generis.*

(See *Genung v. Hagemann* (1968), 103 Ill. App. 2d 409, 242 N.E.2d 790.) We believe that the rights contemplated under this paragraph are those which are integral to the marital status—inheritance rights and entitlements to property—that a person acquires by law upon marriage. In contrast, a potential claim for attorney fees is ancillary to the claims at issue in divorce proceedings. Attorney fees are expenses that result from the litigation of such matters as proper classification and distribution of the property. While Jackie and Philip could have agreed to bear their own legal expenses, and thus explicitly waive the right to seek fees from the other, we conclude that paragraph 1 of the prenuptial agreement cannot be so interpreted.

To the extent the trial court construed the agreement to bar attorney fees, we reverse the finding. As previously noted, however, the trial court did award Jackie fees for a portion of the litigation, that which centered upon the classification of the Kildeer property as marital or nonmarital. We find this award to be within the trial court's discretion; however, on remand, the trial court should reconsider the attorney fee issue in light of this opinion. Whether and to what extent the ultimate award is adjusted is for the trial court to determine upon review of the pertinent factors. See *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.

For the above reasons we reverse the trial court's ruling classifying the Kildeer property as Philip's nonmarital property, vacate the award of attorney fees, and remand for further proceedings.

CROSS-APPEAL

We have disposed of the first contention in Philip's cross-appeal, which challenges the trial court's award of attorney fees to Jackie. He additionally challenges the trial court's refusal to assess Jackie attorney fees under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611), for filing a petition for temporary maintenance.

Philip argues that Jackie should be penalized for filing a motion for "temporary maintenance" when she had knowingly waived claims for "maintenance" under the waiver provisions of the prenuptial agreement.

We agree with the trial court's specific finding that Jackie "had a right to file" her petition for temporary maintenance in June of 1986. The record reveals that when the request was made, Jackie, a flight attendant for 17 years, had lost her job because of a TWA strike. She also had spent virtually all of her savings on living expenses and fees related to the litigation. She never contested the va-

lidity of the prenuptial agreement. She did not claim that she was entitled to permanent maintenance from Philip. What she requested was money for immediate living expenses, money that could have been offset against the sum to which Jackie was entitled under the prenuptial agreement, upon entry of judgment. In fact, Jackie had asked for such an offset as alternative relief. Philip, however, did not agree with that procedure, apparently taking a hard-line position on the waiver issue.[2] Notably, Philip had not moved to dismiss the petition for temporary maintenance as being affirmatively barred by the prenuptial agreement. The trial court pointed this out and ruled that the evidentiary hearing on the petition would proceed.

After several continuances of the evidentiary hearing on the petition, Philip entered an agreed order, without prejudice to his rights, to pay Jackie temporary maintenance for a brief period. Shortly thereafter he filed for partial summary judgment on the grounds that the prenuptial agreement barred Jackie's claim for temporary maintenance. The court granted the motion. Subsequently, Philip moved to sanction Jackie for requesting temporary maintenance in the first place.

■ We do not condone the use of section 2—611 as a tool of harassment or intimidation. Jackie's request, based on financial need, was not expressly barred by the terms of the prenuptial agreement. Temporary relief, moreover, is based on different considerations than is permanent relief, and we do not find Philip's citation to *Volid v. Volid* (1972), 6 Ill. App. 3d 386, 286 N.E.2d 42, authority for imposing fee sanctions on a litigant in Jackie's position. *Volid* does not involve the application of section 2—611.

■ Since the prenuptial agreement entitled Jackie to a sum of money in lieu of maintenance and other claims, her request for what could be treated as an advance on those sums seems to be entirely reasonable. Jackie's petition was certainly not frivolous or unfounded, and in pursuing attorney fees against Jackie, Philip not only ran up his own fees but increased hers as well. We conclude that Philip's motion for sanctions was ill-advised. The trial court properly denied it.

---

[2]We find it difficult to understand why the parties, or their attorneys, could not have simply stipulated to allowing Jackie a temporary award, to be offset against the amount of her final judgment. Such an agreement could have been structured to preserve the rights of either side to present argument in a declaratory proceeding as to whether temporary maintenance was included in the general waiver provision. If so, Philip would receive a credit on the amounts paid to Jackie as interim relief (and possibly interest). If not, Jackie would receive the full amount provided in the prenuptial agreement, without offsets.

The judgment of the trial court is reversed as to the classification of the Kildeer property, vacated as to the attorney fee issue, affirmed on the remaining issues, and remanded for further proceedings.

Reversed in part, affirmed in part, and remanded.

JOHNSON and McMORROW, JJ., concur.